590 P.2d 447

**George E. NIEDNER, Sr., and Thelma Niedner, his wife, Appellants,**

**v.**

**THE SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a municipal corporation, Appellee.**

No. 13594.

Supreme Court of Arizona,
In Division.

Jan. 10, 1979.

Rehearing Denied Feb. 14, 1979.

Richard T. Weissman, Phoenix, for appellants.

Jennings, Strouss & Salmon by Charles E. Jones, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

Appellant George E. Niedner brought an action for breach of an employment contract against the Salt River Project Agricultural Improvement and Power District claiming that his employment was unconstitutionally terminated. The Superior Court granted the District's motion to dismiss, and Niedner appealed. This Court acquired jurisdiction pursuant to Rule 19(e), Arizona

---

* *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Rules of Civil Appellate Procedure, 17A A.R.S.

Niedner's complaint alleges that on December 22, 1972, he was notified that his employment as Supervisor of Revenue Receipts was being terminated and that he was given three choices effective January 3, 1973: (1) he could remain as a full-time employee of the District in the position of Disbursements Coordinator with a substantial reduction in pay, (2) he could receive a leave of absence without pay for a period of nine months to be followed by termination, or (3) he could resign from employment. The District concedes that the removal of Niedner from his job was tantamount to discharge.

Niedner has two basic positions. The first is that his employment was terminated in violation of the due process clauses of the Arizona Constitution and the Fourteenth Amendment of the United States Constitution. The basis for this is the assertion that his discharge was without notice or an opportunity to be heard. The second, based on the Equal Protection Clause of the United States Constitution, is that as a member of the class of salaried employees working for the District, he was discriminated against because salaried workers are not protected by the same grievance procedures granted hourly-paid workers through their collective bargaining agreement with the District. Appellant in his complaint also asked the Superior Court to certify that his equal protection claim was maintainable as a class action on behalf of all the District's salaried employees.

■ The threshold question in any due process or equal protection claim arising out of the federal constitution is whether the claimed deprivation falls within the perimeter of "state action." Private action is immune from the restrictions imposed by the Fourteenth Amendment. See *Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Similarly, Art. 2, § 4 of the State Constitution applies only to state action. *Dimond v.*

*Samaritan Health Service,* 27 Ariz.App. 682, 558 P.2d 710 (1976). If the termination of appellant's employment by the District was "private" rather than state action, the complaint fails to state a justiciable claim, and the motion to dismiss was properly granted.

■ The appellee is an agricultural improvement district organized pursuant to A.R.S. § 45–901 et seq., and is designated a political subdivision of the State by Art. 13, § 7 of the Arizona Constitution. As such, it is vested with all the rights, privileges, and immunities of a municipality. It is argued that because of the District's status, its termination practices must be considered state action, but we think otherwise.

The District's powers as a political subdivision are "limited to the purposes justifying its political existence" and the provisions of Art. 13, § 7 do not alter the inherent characteristics of the District as "a business corporation with attributes of sovereignty which are only incidental, conferred for the purposes of better enabling it to function and accomplish the business and economic purposes for which it was organized." *City of Mesa v. Salt River Project Agricultural Improvement and Power District,* 92 Ariz. 91, 97, 103–4, 373 P.2d 722, 726, 731 (1962). Unlike other municipal corporations owned by the public and managed by public officials, the District is owned and managed by private landowners and, although the District supplies services to the public such as electrical power, the profits of its operations are used to defray the expenses of irrigation of private lands of the District's landowners.

Nor are its employees paid with public funds. In *Local 266, International Brotherhood of Electrical Workers v. Salt River Project Agricultural Improvement and Power District,* 78 Ariz. 30, 275 P.2d 393 (1954), we said:

"Public employment means employment by some branch of government or body politic specially serving the needs of the general public. It cannot be said that the District's employees are paid from the public treasury as are employees of the

public. The public does not own the District. A governmental entity such as a city or town does not manage or benefit from the profits of this District. Instead the owners are private landholders. The profits from the sale of electricity are used to defray the expense in irrigating these private lands for personal profit. The public interest is merely that of consumers of its product, for which they pay." 78 Ariz. at 44, 275 P.2d at 402–3.

The Supreme Court of the United States stated in Moose Lodge, supra, that it has never held that conduct which would otherwise be private violates the Fourteenth Amendment "if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever" because "such a holding would utterly emasculate the distinction between private as distinguished from state conduct * * *." 407 U.S. at 173, 92 S.Ct. at 1971. The test for determining the existence of state action by a private entity is not the relationship between the state and the entity, but rather "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Company,* supra, 419 U.S. at 351, 95 S.Ct. at 453. *See also State v. Droutman,* 143 N.J.Super. 322, 362 A.2d 1304 (1976).

Appellant points to the fact that the District is required to comply with the minimum wage laws and must pay its social security taxes through the State. He also notes that the District is authorized by A.R.S. § 38–781.20 to implement a supplemental retirement plan for employees to be administered by the State Retirement System Board, although the District has not chosen to do so. Granted, the District's employee relations are regulated to some extent by the State, but it has not been shown that the State regulates the termination procedures of the District and, in fact, no claim is made that there is a direct connection between Niedner's termination and the State.

We consider that since the District's termination practices cannot be fairly characterized as state action, Niedner's complaint failed to state a claim upon which relief can be granted. It is therefore unnecessary to decide the other issues raised on appeal.

Judgment of the Superior Court is affirmed.

HOLOHAN and GORDON, JJ., concur.