630 P.2d 1036

PINETOP–LAKESIDE SANITARY DISTRICT, Plaintiff-Appellant,

v.

Ed J. FERGUSON, Clerk of the Superior Court in and for the County of Navajo, Defendant-Appellee.

No. 1 CA–CIV 4567.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 30, 1980.

Rehearing Denied Nov. 18, 1980.

Review Granted Dec. 9, 1980.

See also, Ariz., 630 P.2d 1032, vacated.

John G. Gliege, Scottsdale, for plaintiff-appellant.

Jay V. Flake, Navajo County Atty., Michael Prost, Deputy County Atty., Holbrook, for defendant-appellee.

## OPINION

WREN, Judge.

The sole issue raised in this appeal is whether a sanitary district organized under the laws of the State of Arizona is exempt from payment of a Superior Court filing fee. We hold that it is not.

Appellant is a sanitary district organized under Title 36, Ch. 11 of the Arizona Revised Statutes, § 36–1301 *et seq.* Under this statute, appellant was formed for the purpose of providing sanitary sewerage disposal to certain property owners in the Pinetop-Lakeside area of Navajo County. Appellee is the Clerk of the Superior Court of Navajo County.

On April 12, 1978, appellant's counsel filed twenty complaints in eminent domain.[1] Appellee demanded a filing fee of $30.00 per complaint which appellant paid under protest. Appellant then filed a special action complaint in Superior Court, paying an additional filing fee of $30.00 and seeking to compel appellee to refund all filing fees. The trial court ruled in favor of appellee and appellant brought this appeal.

Appellant claims its exemption from Superior Court filing fees by virtue of A.R.S. § 12–304:

*Exemption of state, county or political subdivisions*

---

1. Powers of condemnation are granted to sanitary districts by A.R.S. § 36–1310(3).

No court fees shall be charged:

1. The state, a county or a political subdivision of a county.

2. A commission, board or department of the state, or of a county or a political subdivision of a county.

3. An official of the state, county or political subdivision of such county, who is a party to an action in his official capacity.[2]

Appellant argues that its exemption stems from the fact that it is a political subdivision of the State of Arizona. *See Payson Sanitary District of Gila County v. Zimmerman*, 119 Ariz. 498, 581 P.2d 1148 (App.1978). Its argument is that, since counties are specifically exempt and counties are political subdivisions of the state, sanitary districts, being also political subdivisions of the state, should be exempt. *See Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949).

■ This position, however, is not consonant with the plain wording of A.R.S. § 12–304. Although the statute exempts counties, and political subdivisions of the county, political subdivisions of the *state* are not exempted. When the language of a statute is unambiguous, the statute must be given its plain and obvious meaning. *Dewitt v. Magma Copper Company*, 16 Ariz. App. 305, 492 P.2d 1243 (1972). Therefore, appellant is not, by the terms of the statute, exempted from the payment of court fees.

Appellant alternatively relies, however, upon Art. 13, § 7 of the Arizona Constitution in urging that as a tax levying public improvement district, it is entitled to all the immunities and exemptions granted municipalities and political subdivisions of the state. Art. 13, § 7 provides:

Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improve-

ment districts, now or hereafter organized pursuant to law, shall be political subdivisions of the State, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this Constitution or any law of the State or of the United States; but all such districts shall be exempt from the provisions of sections 7 and 8 of Article IX of this Constitution.

Appellant's point seems to be that the grant of privileges and exemptions under this constitutional provision places tax levying improvement districts on a par with cities, counties and even the state itself. Appellant asserts in its brief: "Clearly, a sanitary district as a municipal corporation and a political subdivision of the state is in fact the same as a state, a part of the state and thus if the state is not charged court fees, a part of the state should not be."

■ We find, however, that this constitutional provision was enacted for the sole purpose of exempting the property of certain public improvement districts from *taxes* and was not intended to grant them full municipal status. Thus, we agree with appellee's argument that whether or not a sanitary district falls within the purview of Art. 13, § 7, the grant of privileges and exemptions means only that political subdivisions of the state are entitled to immunity from *taxation* and not for exemption from payment of court filing fees.

To approach the issue from an historical background, Art. 13, § 7, was adopted as an amendment to the Arizona Constitution in 1940 for the sole purpose of reversing the effect of the Supreme Court's decision in *State of Arizona v. Yuma Irrigation District*, 55 Ariz. 178, 99 P.2d 704 (1940), which held unconstitutional a statute granting the

---

**2.** The statute was later amended by *Laws,* 1978, Ch. 84, § 1, effective September 3, 1978:

*Exemption of state, county, city, town or political subdivision of a county from court fees*

No court fees shall be charged:

1. The state, a county, a city, a town or a political subdivision of a county.

2. A commission, board or department of the state, a county, a city, a town or a political subdivision of a county.

3. An official of the state, county, city, town or political subdivision of a county, who is a party to an action in his official capacity.

enumerated districts tax immunity. The irrigation districts, and all other improvement districts by implication, were confronted with the prospect of having to pay substantial portions of their income for taxes. The adoption of Art. 13, § 7 restored their immunity from taxation. *See Opinion of the Attorney General* 60–54 (1960); *Taylor v. Roosevelt Irrigation District*, 71 Ariz. 254, 226 P.2d 154 (1950), *aff'd. on rehearing*, 72 Ariz. 160, 232 P.2d 107 (1951), which stated in part as follows:

> [T]he constitutional amendment, Section 7, Article 13, was adopted for the purpose of granting tax immunity to irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improvement districts. 72 Ariz. at 162–163, 232 P.2d at 108.

In our opinion, the adoption of Art. 13, § 7 was never intended to change the basic nature of improvement districts, or to grant them governmental powers on a par with cities, counties or the state itself. We do not read it as vesting them with any powers or privileges above and beyond those strictly necessary to carry out their limited functions. In fact, cases construing this constitutional provision have taken great pains to distinguish the limited proprietary purposes of such improvement districts from the primarily governmental functions of other government entities. *Taylor v. Roosevelt Irrigation District; Santa Cruz Irrigation District v. Tucson*, 108 Ariz. 152, 494 P.2d 24 (1972); *City of Mesa v. Salt River Project*, 92 Ariz. 91, 373 P.2d 722 (1962); *Valley National Bank v. Electrical District No. 4*, 90 Ariz. 306, 367 P.2d 655 (1961). For example, in discussing "basic limitations," the Supreme Court distinguished electrical districts from cities or towns as follows:

> Electrical districts organized under A.R.S. § 30–501, *et seq.* are distinguishable from cities or towns. They do not exercise governmental functions except in limited spheres, such as taxation and eminent domain. The statute authorizes their existence primarily for carrying on the business of pumping water for irrigation, not for the benefit of the general public, or

for exercising political prerogatives but for the proprietary benefit of owners of farms within the District. 90 Ariz. at 312–313, 367 P.2d at 660.

*Valley National Bank* concluded by holding that Art. 13, § 7 did not immunize the electrical district from the liabilities imposed by Arizona banking laws. In accord is *City of Mesa v. Salt River Project*, where the Supreme Court held that the constitutional provision did not exempt the Salt River Project from the exercise of eminent domain by the City of Mesa. In *Taylor v. Roosevelt Irrigation District*, the court found that an irrigation district was not immunized from tort liability in the exercise of its proprietary functions.

More recently, in *Niedner v. Salt River Project*, 121 Ariz. 331, 590 P.2d 447 (1979) it was held that the Project's actions in firing an employee were private as opposed to state actions, notwithstanding Art. 13, § 7, for purposes of a due process or equal protection claim under the U. S. Constitution. We conclude, therefore, that sanitary districts are no different than irrigation districts or electrical districts organized under state law, and that this article confers no additional powers nor greater exemptions beyond those strictly necessary to carry out their limited functions. In this regard, we note the reason for fee exemptions as articulated in *Hammons v. Waite*, 30 Ariz. 392, 247 P. 799 (1926):

> In territorial days court fees and costs of a similar nature advanced by litigants belonged to the officers who received them. Under statehood they become public moneys the minute they are paid, and must be accounted for as such by the receiving officer. If the state or any county or any political subdivision of such county is a party to a suit, or if any official of the state or any county or political subdivision thereof is a party in his official capacity, to require it or him to pay court fees or costs in advance as they are ordinarily paid by private parties litigant would be simply taking money out of one pocket of the public and put-

ting it into another, at a useless waste of time, bookkeeping and balancing of accounts between the different departments. We think the real purpose of [A.R.S. § 12–304] was to prevent such a condition * * *. 30 Ariz. at 395; 247 P. at 800–801.

The court went on to hold that the state superintendent of banks who had been appointed receiver for a defunct bank was not exempted from paying a court fee, and that the exemption of A.R.S. § 12–304 [3] applied only in cases where the public was the real party in interest. The court found that the superintendent was not acting directly for the benefit of the public but as trustee or representative for the bank's depositors.

We adhere to the rule of *Hammons* and hold that although appellant is acting as a municipality in the sense that it provides sewerage facilities to its constituents, it nevertheless is carrying out a proprietary function for a limited group of landowners. As such it enjoys no greater exemption than any of the other entities designated in Art. 13, § 7. Furthermore, requiring appellant to pay the filing fee would not be an unnecessary taking of public money from one pocket and placing it in another. The trial court did not, therefore, err in denying the relief requested by appellant.

Affirmed.

FROEB, P. J., and DONOFRIO, J., concur.