631 P.2d 553

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, Plaintiff-Appellee,**

v.

**CITY OF PHOENIX, a municipal corporation, Defendant-Appellant.**

No. 1 CA–CIV 4360.

Court of Appeals of Arizona, Division 1, Department B.

May 5, 1981.

Rehearing Denied June 17, 1981.

Review Denied July 7, 1981.

Burch & Cracchiolo, P.A., by Daniel Cracchiolo, Stephen E. Silver, Phoenix, for plaintiff-appellee.

Andrew Baumert, III, City Atty., by Philip M. Haggerty, Asst. City Atty., Phoenix, for defendant-appellant.

## OPINION

EUBANK, Judge.

The main issue to be determined on this appeal is whether the City of Phoenix (City) may impose its privilege license tax (excise) on the sale of electricity by the Salt River Project Agricultural Improvement and Power District (Salt River Project or Project) to the Roosevelt Irrigation District (Roosevelt District). We hold that it may not, and affirm the judgment of the trial court.

The facts are not in dispute. Salt River Project entered into a "Water Contract" with Roosevelt District's predecessor on August 25, 1921, by which it sold certain of its pumping facilities and drainage works to the Roosevelt District and agreed to furnish electricity at cost to the Roosevelt District in consideration for Roosevelt's pumping and draining part of the Salt River Project lands. For performing this service, Roosevelt District was given the use of all pumped and other waste water to use for its own irrigation needs. This contract was reviewed and approved in *Brewster v. Salt*

River Valley Water Users' Ass'n, 27 Ariz. 23, 229 P. 929 (1924).

On December 15, 1975, the City commenced a privilege license tax audit of the Salt River Project for the period from November 1972 through October 1975. As a result, a tax assessment was made against the Project in the amount of $36,803.82,[1] including penalties and interest, based on its gross sales of electricity to the Roosevelt District under the provisions of the "Water Contract." Salt River Project protested the tax assessment, and when the protest was denied, it paid the tax under protest and sued the City for recovery of the tax in the superior court. Since no factual issue was involved, both parties moved for summary judgment. The trial court granted Salt River Project's motion and denied the City's. The court said in its judgment:

> that under the facts and the law the Plaintiff, Salt River Project Agricultural Improvement and Power District, is exempt from the city sales taxes imposed by the City of Phoenix upon the transaction described in the Complaint.

The City then perfected its appeal from the summary judgment.

Although the trial court did not specifically state the legal basis for its ruling, it is clear from the record the basis was the court's conclusion, as a matter of law, that Salt River Project's sale of electricity to the Roosevelt District under the terms of the "Water Contract" involves the exercise of its *governmental* function as opposed to its *proprietary function*, thereby exempting the tax under Article XIII, § 7 of the Arizona Constitution. The main thrust of the City's appeal is directed to this alleged error.

The City contends that "The Supreme Court has flatly and repeatedly held that in their ordinary activities of selling water and electricity, agricultural water and electrical districts act in a proprietary [rather than a governmental] capacity." In sup-

---

1. There was an additional assessment for "In-Phoenix Utility Sales", which is not contested in this appeal.

port of its contention, the City cites *Taylor v. Roosevelt Irrigation Dist.*, 71 Ariz. 254, 226 P.2d 154 (1950), *modified on rehearing*, 72 Ariz. 160, 232 P.2d 107 (1951), and *City of Mesa v. Salt River Project Agr. Imp. & Power Dist.*, 92 Ariz. 91, 373 P.2d 722 (1962). We believe the decisions cited are not controlling, as explained below.

The Salt River Project was the first project organized under the Reclamation Act of 1902 which provided federal financing for reclamation of arid lands in the western United States. Act of June 17, 1902, 32 Stat. 388 (43 U.S.C.A. § 371 et seq.). Surplus power sales were permitted by the Act of April 16, 1906, ch. 1631, § 5, 34 Stat. 117 (43 U.S.C.A. § 522 et seq.).[2] Both the Salt River Project and the Roosevelt District are political subdivisions of the state and immune from taxation by virtue of Article XIII, § 7, Arizona Constitution. They are also municipal corporations by virtue of A.R.S. §§ 45–902 and 45–1501. *See also Uhlmann v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965).

Electrical power sales by the Salt River Project are also authorized by A.R.S. § 45–903(A)(6) and (7). A.R.S. § 45–903(A)(6) provides that one purpose of the Project is:

> [t]o provide new or additional means for the irrigation or drainage of all or a part of the lands or to provide power or a means of communication for the use of the owners or occupants of the lands.

A.R.S. § 45–903(A)(7) provides that an additional purpose of the Project is:

> [t]o reduce the cost of irrigation, drainage and power to the owners of the lands in the district by the sale of surplus water or power produced, owned or controlled by the district, and the construction, maintenance, extension, replacement, financing and refinancing of the works useful for such purpose.

■ A.R.S. § 45–903 thus recognizes that electrical power generated by the Salt River Project may be used within the district for project purposes or, where a surplus

exists, it may be sold to provide a revenue source for financing project activities. The fact that the Salt River Project sells surplus power as a revenue source in its proprietary capacity does not defeat its status as a municipal corporation and political subdivision of the state. *Rubenstein Const. Co. v. Salt River Project Agr. Imp. & Power Dist.*, 76 Ariz. 402, 265 P.2d 455 (1953).

The *Taylor* case recognized that an irrigation district may act in a proprietary as well as a governmental capacity. The court in *Taylor* held that a political subdivision acting in its proprietary capacity is liable for negligence. In the *City of Mesa* case it was held that retail sales of electricity by the Salt River Project are in the nature of proprietary activities. Similarly, sales of water by cities to consumers are held to be proprietary business activities of the cities, rather than governmental acts. *Town of Somerton v. Moore*, 58 Ariz. 279, 119 P.2d 239 (1941); *City of Phoenix v. State ex rel. Conway*, 53 Ariz. 28, 85 P.2d 56 (1938).

The City has raised an additional contention that the Project has no governmental functions whatsoever, and thus is not entitled to the exemption even under the Project's version of the transaction between the Project and Roosevelt District. The City cites *Valley Nat'l Bank v. Electrical Dist. No. 4*, 90 Ariz. 306, 367 P.2d 655 (1961) and *Local 266, Int'l Bhd. of Electrical Workers v. Salt River Project Agr. Imp. & Power Dist.*, 78 Ariz. 30, 275 P.2d 393 (1954) in support of its argument that the Project "exists merely to move dirt and channel water", which "does not rise to the dignity of government."

We are not persuaded by the City's argument on this point. In *Valley Nat'l Bank, supra*, the Electrical District argued that it was immune from the operation of a section of the banking code because the code section was in the nature of a statute of limitations, the District was a municipality, and municipalities were immune from statutes

---

**2.** The Act was amended by the Act of September 18, 1922, ch. 323, 42 Stat. 847 (43 U.S.C.A. § 598 et seq.).

of limitations. The court found that the code section was not a statute of limitations and that municipalities were not immune from such statutes in any event. The court stated that:

> Electrical districts organized under A.R.S. § 30–501 et seq. are distinguishable from cities or towns. They do not exercise governmental functions *except in limited spheres. . . .* Their governmental status *is similar to that of irrigation districts* organized under A.R.S. § 45–1501 et seq.

*Valley Nat'l Bank v. Electrical Dist. No. 4,* 90 Ariz. at 312–13, 367 P.2d at 660 (1961) (emphasis added). Thus this case supports the Project's contention that, within the limited sphere of its drainage and irrigation function, it does exercise a governmental function.

■ In *Local 266, supra,* the Project argued that it could not enter collective bargaining agreements with its employees because, as a governmental agency, it could not delegate to a union the authority to control the Project's actions. The Project also contended that its employees were public employees and should be denied the right to strike on the general grounds of public necessity. The court rejected both arguments, finding that in employing workers the Project was acting in its proprietary function, and "when a governmental entity functions in a proprietary nature" it should be able to make contracts as necessary to enable it to perform as efficiently as a private individual could. *Local 266, Int'l Bhd. of Electrical Workers v. Salt River Project Agr. Imp. & Power Dist.,* 78 Ariz. at 39, 275 P.2d at 399 (1954). The court found that Project employees were not agents of the government in that a strike against the Project was a "strike against the public." *Id.* at 44, 275 P.2d at 403. The City's brief quotes the distinctions made by the court between the Project and a city or town; however, we believe that the City is ignoring the context of the discussion. *Local 266* dealt with whether the Project was a governmental entity in the context of contracting with employees, and held that it was not acting as a governmental entity in that context. The *Local 266* court quoted from

*Taylor v. Roosevelt Irrigation Dist., supra,* to the effect that irrigation districts "in the conduct of their ordinary business . . . are not exercising governmental or political prerogatives. . . ." The *Taylor* case found that the irrigation district was not immune from ordinary tort liability in maintaining its canals. These cases also support the Project's contention, because each case recognizes that irrigation districts have both proprietary and governmental functions. We hold that the Project serves a governmental function while engaged in the primary public purpose for which it was authorized and formed: the reclamation and irrigation of arid lands, the drainage of waterlogged lands, and the production of electricity for these purposes. *Bethune v. Salt River Valley Water Users' Ass'n,* 26 Ariz. 525, 227 P. 989 (1924); *Brown v. Electrical Dist. No. 2,* 26 Ariz. 181, 223 P. 1068 (1924); A.R.S. § 45–903.

In earlier and harder days, drought was the main enemy of farmers on Arizona's deserts. The reclamation of land and the conservation and use of water to grow crops and to raise animals were all important for the economic survival of the Territory. The various districts provided a cooperative means whereby farmers could band together to create dependable water works for the delivery of irrigation water to the farms within the district without the use of territorial funds. Whether the districts accomplished their public purpose separately or in concert with other districts made no difference. *In re Auxiliary Eastern Canal Irrigation Dist.,* 24 Ariz. 163, 207 P. 614 (1922). This cooperative spirit was involved in *Brewster v. Salt River Valley Water Users' Ass'n,* 27 Ariz. 23, 229 P. 929 (1924), where the basic contract *sub judice* was considered. In *Brewster,* the question was whether the Water Users' Association (Association) had the authority to enter into the 1921 contract with Roosevelt District's predecessor. Our supreme court held that the Association did have the authority to do so, that the action of its board in contracting with Roosevelt's predecessor was not an ultra vires act, that providing drainage by

pumping was a continuing and expensive problem to the Association, and that the Water Contract was an authorized method by which the Association could deal with its drainage and waste water problems, while at the same time meeting the need of Roosevelt's predecessor for irrigation water. Since the *Brewster* opinion, the Water Users' Association has become the Salt River Project,[3] and The Carrick & Mangham Agua Fria Lands & Irrigation Co. has been succeeded by the Roosevelt District.

■ The incidence of the City's excise tax is on the Salt River Project's sale of non-surplus electricity, at cost, to Roosevelt District, under the Water Contract. The electricity sold to Roosevelt District is used to accomplish the primary governmental purpose of each: drainage and irrigation. This is not, then, a tax on "surplus" electric sales incidental to the primary purpose of Salt River Project, but rather it is a tax on the primary purposes of both the Project and Roosevelt District.

We hold that the City has illegally assessed its excise tax against the Salt River Project on its electricity sales to Roosevelt District. We therefore agree with the trial judge's disposition of the issue granting summary judgment to Salt River Project.

Our holding makes it unnecessary to address the other remaining issues raised by the City. The summary judgment is affirmed.

HAIRE, P. J., and O'CONNOR, J., concur.

**3.** Salt River Project's long and interesting history is described in *Uhlmann v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965).