**Louis GORENC, Plaintiff–Appellant,**

v.

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, Defendant–Appellee.**

**No. 87–2902.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 12, 1988.*

Decided March 8, 1989.

Louis Gorenc, Apache Junction, Ariz., pro se.

Charles E. Jones and Margaret H. Downie, Jennings, Strous & Salmon, Phoenix, Ariz., for defendant-appellee.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Before ALDISERT[**], BRUNETTI and LEAVY, Circuit Judges.

BRUNETTI, Circuit Judge:

Plaintiff-appellant, Louis Gorenc ("Gorenc"), filed a pro se complaint in U.S. District Court against the defendant-appellee, Salt River Project Agricultural Improvement and Power District ("Salt River"). Gorenc alleged Salt River violated his right to procedural due process under the Fifth and Fourteenth Amendments and asserted a claim under 42 U.S.C. § 1983. He alleged that Salt River had terminated his employment under "color of state law" without notice and an opportunity to respond to the reasons for his discharge.

The district court granted Salt River's motion to dismiss for failure to state a claim upon which relief could be granted on the grounds that the discharge of Gorenc did not constitute state action sufficient to allege a constitutional deprivation. We hold that Salt River is a governmental entity only for a limited purpose and the termination of Gorenc was a proprietary function, and purely private action and affirm the district court.

## I.

### BACKGROUND

The history of Salt River began in the late 1860's, as farmers combined efforts to irrigate the arid lands of the Salt River Valley. *Ball v. James*, 451 U.S. 355, 357, 101 S.Ct. 1811, 1814, 68 L.Ed.2d 150 (1981). Today, Salt River is an Agricultural Improvement District organized under Title 48, Chapter 17 of the Arizona Revised Statutes. A.R.S. § 48–2301 *et seq.* (West, 1986). The Salt River directors are elected by its owners, with voting rights apportioned according to the number of acres owned. *Ball*, 451 U.S. at 357, 101 S.Ct. at 1814. Salt River stores and delivers un-

treated water to these landowners in the Salt River area, comprising 236,000 acres in Central Arizona. *Id.* Salt River subsidizes its water operations by generating and selling hydroelectric power to hundreds of thousands of people in an area which includes part of metropolitan Phoenix. *Id.* Salt River is privately funded, servicing its general obligation bonds and capital improvement bonds entirely out of its electricity revenues. *Id.* at 361–62, 101 S.Ct. at 1816.

Salt River is designated as a political subdivision of the State by Article XIII, § 7 of the Arizona Constitution. *Niedner v. Salt River Project Agricultural Improvement and Power Dist.*, 121 Ariz. 331, 332, 590 P.2d 447, 448 (1979). Unlike public entities, Salt River is only immune from taxation on those activities that are its primary government purpose. *Salt River Project v. City of Phoenix*, 129 Ariz. 398, 400, 631 P.2d 553, 555 (1981). Salt River's governmental powers are "limited to the purposes justifying its political existence," *Niedner*, 590 P.2d at 448 (quoting *City of Mesa v. Salt River Project Agricultural Improvement and Power Dist.*, 92 Ariz. 91, 97, 373 P.2d 722, 726 (1962)), such as the power to levy taxes on real property located within the district, to sell tax-exempt bonds and to exercise eminent domain, *Ball*, 451 U.S. at 360, 101 S.Ct. at 1815, but it has no power to impose ad valorem property taxes or sales taxes, or to enact general laws. *Id.* at 366, 101 S.Ct. at 1818.

Salt River employed Gorenc as an auto mechanic for five years. Gorenc was injured on the job May 6, 1985 and took medical leave from May 7 until June 26, 1985. Gorenc returned to work June 26, 1985, to face an investigatory meeting about the date he should have returned to work. Gorenc was suspended from his employment at that meeting. Salt River notified Gorenc on July 3, 1985, that his employment had terminated effective June 26th (the day of the meeting). He had no

[**] Honorable Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designation.

opportunity to discuss this termination with Salt River. He then filed his complaint and the district court granted Salt River's motion to dismiss.

## II.

## DISCUSSION

A. *State action is a matter of federal law.*

The prohibitions of the Fourteenth Amendment are directed only at the states, hence it can be violated only by conduct that is characterized as "state action." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Title 42 U.S.C. § 1983 provides remedies for deprivations of rights under the Constitution and laws of the United States when the deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Id.;* 42 U.S.C. § 1983.

The district court held that Salt River's termination practices did not constitute state action—thus precluding Gorenc's claims. The district court cited Arizona law for the fact that although Salt River is a political subdivision under the law, in employment matters it acts in a proprietary function and not in a governmental function. *See Niedner,* 590 P.2d at 448. The district court noted that the United States Supreme Court appeared to support this conclusion in its discussion of the voting procedures of Salt River in *Ball,* 451 U.S. at 368, 101 S.Ct. at 1819. The district court did not discuss the state action requirement under federal law. While *Ball* did discuss the nature of Salt River, it is not dispositive of the issue here. In that case, the United States Supreme Court decided that Salt River's voting system, which limited voting eligibility to landowners and apportioned voting power according to the amount of land a voter owns, was constitutional. *Ball* at 370, 101 S.Ct. at 1820–21. The Court found the peculiarly narrow function of Salt River and its special relationship of one class of citizens (the landowners) to that body "releases it from the strict demands of the one-person, one-vote

principle of the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 357, 101 S.Ct. at 1814. The case did not decide whether Salt River's role as an employer was state action. The Arizona cases, while persuasive, are also not dispositive.

Whether certain conduct is "under color of state law" or "state action" is a question of federal, not state law. *Mildfelt v. Circuit Court,* 827 F.2d 343, 345–46 (8th Cir.1987); *Marshall v. Sawyer,* 301 F.2d 639, 646 & n. 5 (9th Cir.1962). *See also Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (United States Supreme Court overruled state supreme court's determination of no state action). Otherwise, the states acting through their legislatures or courts would have the power to immunize their agencies and officials from liability under the Civil Rights Act. *Marshall,* 301 F.2d at 646. We need to make an independent inquiry as to the presence or absence of state action under federal law.

However, we note that the Arizona courts have dealt directly with the issue here, *see Niedner,* 590 P.2d at 449, and we accept their authority as persuasive to our holding. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1286–87 n. 3 (9th Cir.1977) (federal law rather than state law is controlling on issues of due process although state cases may be persuasive authority). *See also Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988) (state law not determinative in proper applicability of federal constitutional protections but provides "strong guidance"); *Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1389 n. 4 (9th Cir.1987) (court considered California authority persuasive on an issue as to which it was unclear whether federal or state law controlled).

B. *State action under federal law.*

Gorenc asserts two claims, one under the Fourteenth Amendment and a second under 42 U.S.C. § 1983. A claim upon which relief may be granted against Salt River under § 1983 must meet two criteria: 1) Gorenc must show he has been deprived

of a right "secured by the Constitution and the laws" of the United States, and 2) Gorenc must show that Salt River deprived him of this right while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Gorenc alleges he was entitled to procedural due process, notice and an opportunity to be heard, before being terminated. Before we inquire as to whether Gorenc was deprived of this right, we must first determine if Salt River was a state or private actor when it terminated him.

> [L]iability attaches only to those wrong-doers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."

*National Collegiate Athletic Assn. v. Tarkanian*, —— U.S. ——, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). The inquiry is whether the State was sufficiently involved in causing the harm to the plaintiff, to treat the conduct of the private actor as "under color of state law."

The "state action" requirement of the Fourteenth Amendment is a matter of substantive constitutional law which recognizes that "most rights secured by the Constitution are protected only against infringement by governments." *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753 (quoting *Flagg Bros.*, 436 U.S. at 156, 98 S.Ct. at 1733). "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753. To claim a violation under the Fourteenth Amendment Gorenc must show first, the deprivation was caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the State...." *Id.* at 937, 102 S.Ct. at 2753. Second, the person who did the depriving must have been a "state actor," that is, a state official or someone acting on behalf or in conjunction with the state. *Id.* As Gorenc's § 1983 claim is based on a constitutional right of due process, for purposes

of this case the "state action" requirement of the Fourteenth Amendment and the statutory requirement of action "under color of state law" of a § 1983 claim are identical. *Id.* at 929, 935 n. 18, 102 S.Ct. at 2749–50, 2752–53 n. 18. The United States Supreme Court has articulated four different factors or tests to determine state action without determining whether these different tests are actually different in operation or simply different ways of characterizing the necessary fact-bound inquiry. *Id.* at 939, 102 S.Ct. at 2754–55.

### 1. *"Nexus" Test*

The nexus test inquiry asks "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so the action of the latter may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In *Jackson*, the Court held that the termination of electrical services by a privately owned utility was action by a private actor and not the state even though the company was subject to extensive state regulation. *Id.* at 350–51, 95 S.Ct. at 453. The company's monopoly status and the essential public service it provided were not enough to confer state action. *Id.* at 351–53, 95 S.Ct. at 454. The supplying of a utility service has not traditionally been the exclusive prerogative of the state, *id.* at 353–54, 95 S.Ct. at 455, nor does the regulation of utilities in the state, including the filing and approval by the State of the general tariff which contained the termination provision complained of, make the State in "any realistic sense a partner or even a joint venturer in the [ ] enterprise." *Id.* at 357–58, 95 S.Ct. at 457 (quoting *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176–77, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972)).

Salt River, like the utility in *Jackson*, is owned and operated by private individual landowners. *Niedner*, 590 P.2d at 448. It is not operated for the benefit of the general public but for the benefit of the private landowners in the district. *Id.* The proceeds from the generation and sale of

hydroelectric power are used to pay off bonds incurred for operation and capital improvements of Salt River. *Ball,* 451 U.S. at 357, 101 S.Ct. at 1814. The sale of electricity to hundreds of thousands of consumers in the metropolitan Phoenix area does not make Salt River a state actor. *Jackson,* 419 U.S. at 350–52, 95 S.Ct. at 453–54. Nor does regulation alone confer state action on a private actor. *Moose Lodge,* 407 U.S. at 176–77, 92 S.Ct. at 1973. Case law in Arizona has held that Salt River is not a political sovereign for all purposes but that it only serves a governmental function when it engages in "the reclamation and irrigation of arid lands, the drainage of water logged lands, and the production of electricity for these purposes." *Salt River Project v. City of Phoenix,* 129 Ariz. at 401, 631 P.2d at 556. Thus, Salt River takes on some attributes of a sovereign in that it can levy taxes on real property located in its district, sell tax-exempt bonds, exercise eminent domain, *Ball,* 451 U.S. at 360, 101 S.Ct. at 1815, and is immune from taxation on the sale of electricity. *Salt River Project,* 129 Ariz. at 400, 631 P.2d at 555. But there are other attributes which it does not have by virtue of its limited governmental purpose.

Salt River cannot enact any general laws governing a person's conduct, and cannot administer general governmental functions such as schools, street maintenance, sanitation, health or welfare services. *Ball,* 451 U.S. at 366, 101 S.Ct. at 1818. It cannot impose ad valorem property taxes or sales taxes. *Id.* Unlike public entities, its employees are allowed to strike under their labor contract. *Local 266 v. Salt River Project,* 78 Ariz. 30, 44, 275 P.2d 393, 403 (1954). It is not immune from Arizona banking laws, *Valley Nat. Bank of Phoenix v. Electrical Dist. No. 4,* 90 Ariz. 306, 311, 367 P.2d 655, 660 (1961), or exempt from a city's power of eminent domain, *City of Mesa,* 92 Ariz. at 96–97, 373 P.2d at 727–28, nor is it immune from tort liability in the maintenance of its irrigation canals. *Taylor v. Roosevelt Irr. Dist.,* 71 Ariz. 254, 226 P.2d 154 (1950). The Arizona courts have held that the legislature never intended to grant irrigation districts "governmental powers on a par with cities, counties or the state itself." *Pinetop–Lakeside Sanitary District v. Ferguson,* 129 Ariz. 304, 306, 630 P.2d 1036, 1038 (1980).

Hence, for some purposes, Salt River is treated like a governmental entity while for other purposes it has only the powers of a private company. In the hiring and firing of its employees, Salt River acts as a private company, that is, in a proprietary manner not in a governmental manner. Employees are able to unionize and strike and enter into employment contracts with Salt River. *Local 266,* 78 Ariz. at 39, 275 P.2d at 399. Thus for the purposes of employment, there is not a sufficiently close nexus between Arizona and Salt River to make the actions of Salt River that of the State itself. *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453.

### 2. *"Joint Action" Test*

The joint action inquiry focuses on whether the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity, which on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In other words, if the state "knowingly accepts the benefits derived from unconstitutional behavior", as the city did in *Burton,* then the conduct can be treated as state action. *Tarkanian,* 109 S.Ct. at 462. In *Burton,* the court held the discrimination by the private restaurant located in a publicly owned parking building was state action where the building was "dedicated to 'public uses' in performance of [the Parking Authority's] 'essential governmental functions'", the restaurant was operated as an integral part of the public building devoted to a public parking service, and the rent was paid to the state. *Burton,* 365 U.S. at 723–24, 81 S.Ct. at 861.

Here, the benefit from Salt River runs to the private landowners and not to the pub-

lic generally. Salt River is privately owned, privately run and not financed in any way by the State save for certain tax exemptions. *Niedner,* 590 P.2d at 448–49. Arguably the public benefits from the generation of electricity by Salt River, but this kind of public benefit is not enough to confer state action. *Jackson,* 419 U.S. at 352–53, 95 S.Ct. at 454–55. There is no more joint action here than there was in *Jackson* between the state and the utility and the court in *Jackson* found no state action. *Id.* Save for the regulations and limited sovereign powers, Salt River is a private company with no ties to the state. The limited powers allow it to operate so that it can benefit the landowners who run and benefit from Salt River but they do not create joint action between Salt River and the State.

### 3. *"Public Function" Doctrine*

If the private actor is functioning as the government, that private actor becomes the state for purposes of state action. *Terry v. Adams,* 345 U.S. 461, 469–70, 73 S.Ct. 809, 813–14, 97 L.Ed. 1152 (1953) (the operation of the "Jaybird party" in Texas which held a county primary but called it private so it could exclude blacks was "state action"). The more a property owner, for his advantage, "opens up his property for use by the public in general, the more do his rights become circumscribed by statutory and constitutional rights of those who use it." *Marsh v. Alabama,* 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946). "[T]he owners of privately held bridges, ferries, turnpikes and railroads may not operate them as freely as a farmer does his farm. Since these facilities are built and operated primarily to benefit the public and since their operation is essentially a public function, it is subjected to state regulations [footnote omitted]." *Id.* In *Marsh,* the deputy sheriff of a company-owned town arrested a woman for "trespass" when she refused to stop handing out literature on behalf of Jehovah's Witnesses in violation of a company town rule. The Court held that the company-owned town was acting like a municipality and as such could not abridge constitutional rights. *Id.* at 509, 66 S.Ct. at 280.

Salt River is not "opening up its land" to the general public nor is it playing a role traditionally filled by the government. Here the government had granted certain powers and privileges under the law to allow Salt River to function adequately as an irrigation district. But Salt River has not become the government, like the parallel primary system in *Terry v. Adams* which affected the entire county election system or the company town in *Marsh v. Alabama.* The entities in *Terry* and *Marsh* affected all the citizens of the area. Here, the reach of Salt River is limited to the land within its district and the individual landowners.

### 4. *"State Compulsion" Test*

The state compulsion test asks whether a private actor who violates someone's constitutional rights under the "compulsion" or framework of a state law or a state custom having force of law offends the Fourteenth Amendment. *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 169–170, 90 S.Ct. 1598, 1614–15, 26 L.Ed.2d 142 (1970); *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). In *Adickes* a white woman was denied restaurant service and subsequently arrested for vagrancy because she was in the company of blacks. The court held that if she showed that Kress refused her service because of a state enforced custom compelling segregation of the races in Hattiesburg (Miss.) restaurants, she would meet her state action requirement. *Adickes,* 398 U.S. at 171, 90 S.Ct. at 1615. The state may have acted to give the custom the force of law if the police subjected her to false arrest on a pretext of vagrancy to punish her for dining with black persons, or if the police tolerated threats of violence against her for violating the segregation practice. *Id.* at 172, 90 S.Ct. at 1616. For state action purposes it makes no difference whether the racially discriminatory act by the private party is compelled by statutory provision or custom having the force of law, in either case the state has commanded the

result by its law. *Id.* at 171, 90 S.Ct. at 1615.

Salt River did not discharge Gorenc under compulsion of some state law, or under a state practice which denies "procedural due process" to employees. *Adickes*, 398 U.S. at 169–71, 90 S.Ct. at 1614–16. There is no state action under the state compulsion test in this case.

### C. *Appointment of Counsel.*

■ The district court denied Gorenc appointment of counsel as appointment of counsel in a civil rights case is required only when exceptional circumstances exist. 28 U.S.C. § 1915(d); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir.1986). The district court found here that because Gorenc failed to state a claim for which relief could be granted and because of the high quality of Gorenc's brief to the court that exceptional circumstances did not exist. We agree.

### III.

### CONCLUSION

The characterization of Salt River's action in this case as illustrated in Arizona case law is that of a private actor when terminating an employee. Under each of the four federal tests, Salt River's status as a limited political subdivision does not rise to that of a state actor. The district court's granting of Salt River's motion to dismiss and the district court's denial of appointment of counsel for Gorenc is affirmed.

AFFIRMED.