91 F.3d 1227
 11 IER Cases 1753, 96 Cal. Daily Op. Serv. 5634,
96 Daily Journal D.A.R. 9185
 Jon L. GEORGE, Plaintiff-Appellant,
v.
PACIFIC-CSC WORK FURLOUGH, a California Corporation; Siraaj
Enterprises, Inc., a California Corporation, dba Pacific
Placement Facility and/or Pacific Furlough Activity; Ernest
H. Ernest, II; Steve J. Overstreet; Sinclair Bean,
Defendants-Appellees.
 No. 94-56098.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided July 31, 1996.
 
 Donal M. Hill, San Diego, California, for plaintiff-appellant.
 R. Michael Jordan, Ault, Deuprey, Jones & Gorman, San Diego, California, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California, Rudi M. Brewster, District Judge, Presiding. D.C. No. CV-93-1228-G/RMB.
 Before: BROWNING, WALLACE and FARRIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 George brought six claims against his former employer, Pacific-CSC Work Furlough Facility a/k/a Pacific Placement Facility (Pacific). The first two were federal pursuant to 42 U.S.C. § 1983. The district court ordered George to amend these claims to allege recognizable state action. George failed to do so within the specified time period, and the court dismissed the two federal claims on the pleadings. It declined to exercise jurisdiction over the remaining four state law claims. George appeals from the dismissal. The district court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 I.
 
 2
 Pacific Placement, a private entity, contracted with the County of San Diego to operate a correctional facility. In December 1992, Pacific Placement hired George as a custodial staff officer. The next month, George enrolled in the "Correction Officer Basic Core Course." As a result of the training he received, George alleges he became aware of numerous safety and security violations at Pacific Placement. He discussed these problems in class, but his Pacific supervisors allegedly ordered him to stop or suffer termination. Subsequently, he brought safety and security violations to the attention of Pacific's management.
 
 
 3
 In May 1993, Pacific terminated George on the basis of what George alleges to be false accusations. He insists that his termination was actually in response to and in reprisal for his reporting of safety and security violations and therefore violated the First Amendment and Article I, section 2 of the California Constitution.
 
 II.
 
 4
 Judgments on the pleadings are reviewed de novo. Merchants Home Delivery Serv. v. Frank B. Hall & Co., 50 F.3d 1486, 1488 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995). A district court will render a "judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Yanez v. United States, 63 F.3d 870, 872 (9th Cir.1995) (quotations omitted).
 
 
 5
 Under the First Amendment, as made applicable to the states through the Fourteenth Amendment, a public employer may not fire an employee by reason of his exercise of free speech rights. Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977); see also Clements v. Airport Auth. of Washoe County, 69 F.3d 321, 334 (9th Cir.1995). But the First Amendment protects individuals only against government, not private, infringements upon free speech rights. See Rendell-Baker v. Kohn, 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). Individuals bringing actions against private parties for infringement of their constitutional rights, therefore, must show that the private parties' infringement somehow constitutes state action. See Dworkin v. Hustler Magazine, 867 F.2d 1188, 1200 (9th Cir.), cert. denied, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989). In § 1983 actions, "color of state law" is synonymous with state action. Rendell-Baker, 457 U.S. at 838, 102 S.Ct. at 2769.
 
 
 6
 Since George is not a public employee, he must plead facts which show that Pacific's firing of him constituted state action. Gorenc v. Salt River Project Agricultural Improvement & Power Dist., 869 F.2d 503, 505 (9th Cir.), cert. denied, 493 U.S. 899, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Demonstrating state action is a necessary threshold which George must cross before we can even consider whether Pacific infringed upon his First Amendment rights to free speech.
 
 
 7
 In the complaint's first claim, George attempts to allege state action with the following language:
 
 
 8
 Defendants, at all times relevant hereto, were performing and fulfilling a traditional state and government function, i.e., operating a correctional or detention facility, pursuant to the California Penal Code, the regulations, rules and policies established thereunder, as well as pursuant to the laws, regulations, policies and procedures of the County and City of San Diego, and pursuant to the official policies and customs of the Facility, and as such, were acting under color of state law. In addition, defendants were acting as a federal correctional facility, acting under the color of federal statutes, regulations and policy.
 
 
 9
 This language was repeated in George's second claim, and he also alleged:
 
 
 10
 Defendants, in performing the actions and conduct described herein, were acting in and as part of a conspiracy and scheme, which was designed and intended and the natural consequence of which was to deny and deprive Plaintiff of his rights guaranteed to plaintiff under the Constitutions and the laws of the United States and the State of California.
 
 
 11
 We must determine whether these allegations constitute state action. In a recent opinion, the Supreme Court observed that "it is fair to say that 'our cases deciding when private action might be deemed that of the state have not been a model of consistency.' " Lebron v. National R.R. Passenger Corp., --- U.S. ----, ----, 115 S.Ct. 961, 964, 130 L.Ed.2d 902 (1995) (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614, 632, 111 S.Ct. 2077, 2089, 114 L.Ed.2d 660 (1991) (O'Connor, J., dissenting)). We now look into the murkiness shrouding this area of the law.
 
 III.
 
 12
 The Supreme Court has articulated four distinct approaches to the state action question: public function, state compulsion, nexus, and joint action. See Lugar, 457 U.S. at 939, 102 S.Ct. at 2754. The Court has not indicated whether these approaches are merely factors or independent tests. See id. (declining to resolve whether the different approaches "are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry"); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir.1995); Gorenc, 869 F.2d at 506. Here, as in Parks and Gorenc, all four approaches lead to the same result, and so we need not decide whether the approaches are factors or tests.
 
 A.
 
 13
 George's complaint bases its state action claim almost solely on the public function approach, asserting that Pacific engages in a "traditionally exclusive governmental function." See Rendell-Baker, 457 U.S. at 842, 102 S.Ct. at 2771; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157-64, 98 S.Ct. 1729, 1733-38, 56 L.Ed.2d 185 (1978). Pacific concedes that incarceration is a traditionally exclusive state function. This assumption misses the point, however. The relevant inquiry is "whether [Pacific's] role as an employer was state action" in George's case. Gorenc, 869 F.2d at 505. We conclude it was not.
 
 
 14
 An entity may be a state actor for some purposes but not for others. See id. at 509 (power district, although a limited political subdivision, was not a state actor for employment purposes). "If a private actor is functioning as the government, that private actor becomes the state for purposes of state action." Id. at 508 (citing Terry v. Adams, 345 U.S. 461, 469-70, 73 S.Ct. 809, 813-14, 97 L.Ed. 1152 (1953)). Like the irrigation project in Gorenc, Pacific has been granted "certain powers and privileges under the law to allow [it] to function adequately" as a prison. Accepting George's allegations as true, his complaint offers no indication Pacific has "become the government," Gorenc, 869 F.2d at 508, for employment purposes.
 
 B.
 
 15
 Under the nexus approach, we consider whether George's pleadings demonstrate sufficiently close state involvement in Pacific's decision to fire him. See Rendell-Baker, 457 U.S. at 841-42, 102 S.Ct. at 2771-72; Gorenc, 869 F.2d at 506. George made no allegations which would involve the government in the decision to terminate him. As the above quoted paragraphs from the complaint show, George merely states that Pacific performed the state function of prison administration. This is not enough under Rendell-Baker or Gorenc.
 
 
 16
 George did incorporate into the complaint a copy of the "Agreement for Provision of Community Services Between the County of San Diego and Pacific-CSC Work Furlough." Although his complaint does not explicitly make the claim, it implies that the contract constitutes government involvement in the hiring decision. While the contract shows that the County was enmeshed in certain of Pacific's activities, and could have regulated its employment decisions, it does not demonstrate the County was actually involved in any of Pacific's personnel decisions, such as George's termination.
 
 
 17
 The contract between the County and Pacific does show that the County regulates Pacific employees to some degree. For instance, Pacific is required to "select and provide for training of personnel in accordance with selection and training requirements adopted by the Board of Corrections as set forth in Title 15 of the California Code of Regulations." These regulations contain extensive requirements for the training and monitoring of detention facility employees. The contract prohibits Pacific from hiring individuals who have participated in the Community Furlough Program and requires criminal record and background checks on all employees. Significantly, the County also retains "the right to preclude [Pacific] from employment or continued employment of any individual at the facility."
 
 
 18
 There is, however, no County or state regulation of Pacific-initiated employment termination or disciplinary processes. While the County retains the right to dismiss Pacific employees, the County has neither legally regulated nor contractually specified the manner in which Pacific disciplines or terminates its own employees. As opposed to government involvement with prisoner treatment and the County and state prerequisites for Pacific employees, the County and state have shown no interest in George's type of dispute, a contractor-initiated termination involving Pacific's day-to-day management. The day-to-day management of private contractors performing government functions does not generally constitute state action. See Blum v. Yaretsky, 457 U.S. 991, 1011-12, 102 S.Ct. 2777, 2789-90, 73 L.Ed.2d 534 (1982). George has failed to plead a nexus between the government and the complained-of action.
 
 C.
 
 19
 Under the joint action approach, private actors can be state actors if they are "willful participant[s] in joint action with the state or its agents." Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). An agreement between government and a private party can create joint action. See, e.g., Fonda v. Gray, 707 F.2d 435, 437 (9th Cir.1983) ("A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights."). In his second claim, George alleges only that defendants were "acting in and as part of a conspiracy and scheme." He has not alleged facts to support a claim of concerted action between the County and Pacific.
 
 
 20
 George argues that the close relationship between the County and Pacific creates an "interdependence" that makes the County and Pacific joint actors in his termination. See Gorenc, 869 F.2d at 507. To support this claim, he cites Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). That case involved a close geographic and symbolic relationship between government and private actors, and the holding was apparently limited to the lessee/lessor relationship. Id. at 726, 81 S.Ct. at 862 ("Specifically defining the limits of our inquiry, what we hold today is that when a State leases public property in the manner and for the purpose shown ... here, the proscriptions of the Fourteenth Amendment must be complied with."). No facts have been alleged which could support a claim that George's termination was geographically or symbolically linked to the government.
 
 
 21
 Similarly, West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), cannot help George. There, a physician, even though an independent contractor, was fulfilling the state's Eighth Amendment obligation to provide health care to prisoners and therefore acted under the authority of state law. Id. at 55, 108 S.Ct. at 2258. George's complaint, however, points to no constitutional obligation which Pacific was performing when it terminated his employment. As his termination relates only indirectly to Pacific's obligations pursuant to its government function, West does not control.
 
 D.
 
 22
 Under the state compulsion approach, a private entity acts as the state when some state law or custom requires a certain course of action. See Gorenc, 869 F.2d at 508. Nothing in George's complaint suggests that state law or custom forced Pacific to discharge him.
 
 
 23
 AFFIRMED.