[Civil No. 2057.   Filed June 9, 1922.]

[207 Pac. 611.]

# JAMES H. McCLINTOCK, Appellant, v. THE CITY OF PHOENIX, a Municipal Corporation, Appellee.

1. MUNICIPAL CORPORATIONS—CITY CHARTER HELD NOT TO AUTHORIZE PURCHASE OF SITE FOR STATE ARMORY.—The charter of the city of Phoenix, adopted under Constitution article 13, which authorized it to exercise all powers previously possessed or exercised by the city council, and to acquire and hold real, personal, or mixed property, thereby giving it the power granted to cities by Laws of 1881, No. 58, article 13, section 1, subdivision 1, to erect, purchase or hire necessary buildings for the use of the corporation, did not authorize the purchase of a site and erection of a building for an armory for the use of the National Guard, the title to which was to be taken in the name of the state.

2. MUNICIPAL CORPORATIONS—CANNOT EXERCISE POWERS NOT GIVEN BY CHARTER.—Municipal corporations are creatures of state and possess only such powers as the state confers upon them, subject to addition or diminution at the state's discretion.

3. STATUTES—CALL OF SPECIAL SESSION TO CONSIDER CHANGES IN GOVERNMENTAL MACHINERY DOES NOT AUTHORIZE VALIDATION OF MUNICIPAL BONDS.—A subject for the consideration of the legislature, stated by the Governor in his call for special session as required by Constitution article 4, section 3, subdivision 2, to consider governmental machinery with a view to more closely coordinating, or abolishing certain agencies and activities, did not comprehend or relate to the power of a city to issue or sell bonds for any purpose whatever.

4. STATUTES—CALL OF SPECIAL SESSION TO CONSIDER AMENDMENTS TO PUBLIC IMPROVEMENTS ACT DOES NOT AUTHORIZE VALIDATING MUNICIPAL BONDS.—A statement in the Governor's call that the special session was to consider and enact amendments to the Improvement Act of 1912, with the object of restoring competitive bidding and eliminating any legal doubt or question as to the validity of bonds issued thereunder, did not include validation of proceedings of the city of Phoenix in voting bonds for the acquisition of an armory for the National Guard, as was attempted by the Fifth Legislature, Special Session, Senate Bill No. 57.

5. Statutes—Prohibition Against Enactment of Statutes not Included in Call for Special Session is Mandatory.—The provision of Constitution, article 4, section 3, subdivision 2, that no law shall be considered at a special session, except such as relate to the subject mentioned in the call by the Governor, is mandatory and cannot be disregarded by the legislature.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment reversed and cause remanded, with directions.

Mr. Henry W. Miller, for Appellant.

Mr. R. W. Kramer, City Attorney, for Appellee.

PER CURIAM.—This is what may be termed a "friendly suit" brought to test the power of the city of Phoenix to issue and sell its negotiable coupon bonds to aid in purchasing a site and building thereon, to be located in said city, the title to be taken in the name of the state, and to be used and possessed by the state as an armory for the National Guard; the city to have no right or title or interest in the premises or in the use or possession thereof.

At a regular election in May, 1921, held in the city, the city was authorized to issue bonds for said purpose in the sum of $70,000, and it is proceeding to exercise such authority, by issuing and selling said bonds, and will do so unless restrained.

The plaintiff asserts in his complaint:

"That the said bond issue is unlawful and void for the reason that it is prohibited by the provisions of sections 1 and 7, art. IX, of the Constitution of the State, and for the reason that the said armory is a state institution and is not a public improvement of

5. On conclusiveness of enrolled bill passed at special session not within scope of Governor's message, see note in 40 L. R. A. (N. S.) 28.

the defendant, and for the further reason that the said defendant was without authority to issue said bonds for the aforesaid purpose, and that Senate Bill No. 57 of the First Special Session of the Fifth Legislature is invalid for the reason that such legislation was not within the call of the Governor of the State of Arizona pursuant to which the First Special Session of the Fifth Legislature was called and for the reason that it attempts to amend the charter of the city of Phoenix.''

An injunction was asked for, restraining the defendant, its officers, agents, and employees, from selling said bonds. The defendant demurred to the complaint for want of sufficient facts. From an order sustaining the demurrer and a judgment denying any relief, the plaintiff appeals and assigns four errors, only two of which we need consider. These are:

''(1) That the charter of the city of Phoenix does not authorize the city to invest its funds in the purchase of property the title whereof does not and is not intended to vest in the city.

''(2) That Senate Bill No. 57 of the First Special Session of the Fifth Legislature of the State is invalid for the reason that it is not within the specifications in the governor's call of such special session. . . . ''

We will consider these two assignments in the order given.

The city of Phoenix was first incorporated by a special act of the territorial legislature in 1881, found at page 105 of the Laws of 1881. In article 13, subdivision 1, section 1, thereof, the common council of the city was given power ''to erect, purchase or hire necessary buildings for the use of the corporation.'' In 1913 the city, acting under the authority of article 13 of the state Constitution, adopted a new charter which became its organic law and superseded the charter theretofore existing, as well as all amendments thereto. By the terms of section 1, chapter 2, of the new charter, it is provided, among other things:

"(a) That the city of Phoenix shall . . . exercise and enjoy . . . all . . . powers . . . belonging to, possessed or exercised by the municipal corporation known as the common council of the city of Phoenix."

And—

"(c) It may . . . acquire and hold real, personal or mixed property for the purposes for which it is incorporated. . . ."

Section 2 of the new charter particularizes the purposes for which the city may acquire property as: (a) For libraries, reading-rooms, art galleries, etc.; (b) for waterworks, gasworks, electric light plant, etc.; (c) for telephone and telegraphic systems, etc.; and (e) for any public utility, etc.

We cannot find in the general laws, concerning cities and towns, any extension of powers, beyond those above set forth. If, then, neither the original act of incorporation nor the present charter of the city empowers it to issue and sell its bonds to purchase, or build an armory for the National Guard of the state, and no such power is found in the general law affecting municipal corporations, what the city undertook to do by ordinance, not being for a corporate use or purpose, is without any legal sanction.

"Being a creature of the state and continuing its existence under the sovereign will and pleasure, a municipal corporation possesses such powers and such only as the state confers upon it, subject to addition or diminution at its supreme discretion." 28 Cyc. 258.

In *Von Schmidt* v. *Widbur,* 105 Cal. 151, 38 Pac. 682, the power of the city of San Francisco to purchase a piece of land for a smallpox site was involved. The court, after quoting at considerable extent from Mr. Dillon's work on Municipal Corporations, said:

"As the power of raising money by taxation is conferred for the purpose of defraying the public ex-

penditures, and is to be exercised only for the purpose of meeting such expenditures, the limitation upon this power is effected by limiting the objects for which the moneys may be expended. This power of taxation is one of the highest attributes of sovereignty, and, as a municipality seeking to exercise it must find express authority from the legislature, so its power to disburse the public moneys, being correlative to the power of taxation, must equally find express authority for its exercise. The purchase of real estate, by itself considered, is not the exercise of any governmental function, and such purchase by a municipality can be sustained only by the production of an express authority from the legislature therefor, or upon its being shown that it is necessarily incidental to the exercise of some express function of government with which the municipality is charged.''

It is clear the proposed bond issue is not for any purpose of the city nor in aid of any municipal function, and since at the time it voted in favor of the bond issue and directed the sale of the bonds, the state had not empowered the city to do so, it acted without authority of law.

It only remains to be seen if the defect of power in the city was cured by the validating act of the First Special Session of the Fifth Legislature introduced as Senate Bill No. 57, and to be published as chapter 13 of the Laws of the Special Session. This special, or extraordinary, session of the legislature was convened upon the call of the Governor in the exercise of his constitutional right as expressed in section 3 of subdivision 2, article 4, which reads, in part, as follows:

''The Governor may call a special session, whenever in his judgment it is advisable. In calling such special session, the Governor shall specify the subjects to be considered at such session, and at such session no law shall be enacted except such as relate to the subjects mentioned in such call.''

The Governor in his call specified ten subjects to be considered by the special session, and none of the specifications referred to the power of municipalities of the state to issue bonds and invest the proceeds thereof in property owned by the state, nor do they or any of them in the slightest degree relate to such subject. Eight of the subjects mentioned in the call are so foreign to the validating legislation in question that we pass them with the statement that by no possible construction could they be held to cover the matter. The other two are as follows:

"(5) To consider governmental machinery, state, county and municipal, with a view to more closely co-ordinating, or abolishing certain agencies and activities, and revising expenditures in connection therewith."

"(7) To consider and enact amendments to the improvement act of 1912 and acts amendatory or supplementary thereto with the object of restoring competitive bidding and eliminating any legal doubt or question as to the validity of bonds issued thereunder."

It is apparent that the subject numbered "5" had in view some changes in the officers, commissions, or agents charged with the duties of carrying on the state, county or city government and the expenses in connection therewith, and that these in no way comprehend or relate to the power of the state or county or city to issue or sell bonds for any purpose whatever.

Subject 7 refers to the public improvement act (Laws 1912, c. 55) or the law authorizing cities and towns to improve their streets by special assessments, and to issue bonds in payment thereof when the property owner so desires, and was included in the Governor's call that legislation concerning such public improvements might be enacted and improvement bonds theretofore issued thereunder validated if the

legislature so pleased. The subject matter therein is entirely unrelated to the validation of the proceedings of the defendant city in voting the bonds in question or the ordinance passed by the city directing the issuance and sale of said bonds.

The provision of our Constitution requiring the Governor in his call of a special session to set forth the subjects of legislation, and prohibiting the legislature from enacting any law not comprehended in the call or related to the subjects named therein, is mandatory (section 32, article 2). 25 R. C. L. 806, § 56. It is a limitation on the power of the legislature that must be observed. *Wells* v. *Missouri Pacific R. Co.,* 110 Mo. 286, 15 L. R. A. 847, 19 S. W. 530. It was put into the Constitution by the people themselves, and to allow the legislature to disregard it, and enact laws generally, as may be done at a regular session, would permit the exercise of a power by that body expressly withheld from it by the organic law of the state. We are constrained to hold that the legislative attempt to validate the city's bonds was ineffective because it is legislation foreign to any subject specified in the Governor's call.

The judgment of the lower court is reversed and the cause remanded, with directions that the restraining order as prayed for be granted.