830 P.2d 846

**MARICOPA COUNTY, a political subdivision, Plaintiff–Appellant, Cross–Appellee,**

v.

**MARICOPA COUNTY MUNICIPAL WATER CONSERVATION DISTRICT NO. 1, a municipal corporation, Defendant– Appellee, Cross–Appellant.**

**No. 1 CA–CV 89–483.**

Court of Appeals of Arizona, Division 1, Department D.

June 20, 1991.

Review and Cross-Petition for Review Denied June 16, 1992.

Helm & Kyle, Ltd. by John D. Helm, Sp. Counsel for Maricopa County, Tempe, and Richard M. Romley, Maricopa County Atty. by Cleon M. Duke, Deputy County Atty., Phoenix, for plaintiff-appellant, cross-appellee.

Law Office of Riney B. Salmon II by Riney B. Salmon II, Phoenix, and Jennings, Strouss & Salmon by James M. Ackerman, Phoenix, for defendant-appellee, cross-appellant.

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by W. Scott Bales, Phoenix, for amici curiae Arizona Center for Law in the Public Interest and Grand Canyon Chapter of the Sierra Club.

## OPINION

EUBANK, Judge.

This appeal arises from a dispute over a $2.00 entrance fee charged by Maricopa County (County), and then remitted to Maricopa County Municipal Water Conservation District No. 1 (MWD), for each vehicle entering Lake Pleasant Regional Park. In 1984, the parties entered into an agreement providing that the County would collect the $2.00 fee for MWD's benefit to help offset MWD's spiraling costs for the operation, maintenance and safety of Waddell Dam and Camp Dyer Diversion Dam. The agreement supplemented a 1969 contract authorizing the County to manage a regional park adjacent to Lake Pleasant until 1994.

In August 1988, the County sought a declaratory judgment in the superior court construing and determining the parties' rights under the 1984 agreement. The superior court, after both parties filed motions for summary judgment raising numerous arguments, ruled in MWD's favor on these issues. The superior court also awarded MWD attorneys' fees totalling $10,000.00, pursuant to A.R.S. § 12-348. The court refused to consider MWD's request for a fee award under A.R.S. § 12-341.01(A), finding that A.R.S. § 12-348 imposed a mandatory $10,000.00 limit on attorneys' fee awards against the County.

The County appealed addressing every issue raised in the superior court. MWD cross-appealed arguing that because the action arose from a contract, it was entitled to receive attorneys' fees under A.R.S. § 12-341.01(A), in addition to A.R.S. § 12-348. The amici curiae filed a brief directed at issues arising from the public trust doctrine and access to Lake Pleasant.

## I

Between 1901 and 1918, MWD's predecessor, the Agua Fria Water and Land Company, obtained a federal right of way grant to all the land underlying Lake Pleasant and land lying within 50 feet of the water's edge. The right of way permits MWD to use the land as a reservoir for irrigation water and for other "purposes of a public nature."

MWD was organized in 1925 to provide irrigation water to lands west of Phoenix. MWD completed Waddell Dam and Camp Dyer Diversion Dam in 1928, impounding the Agua Fria River to create the reservoirs known as Lake Pleasant and Lower Lake Pleasant. MWD owns irrigation appropriation rights to the water stored in Lake Pleasant dating from the 1920s. In 1986, the Arizona Department of Water Resources (DWR) added domestic, stock watering, recreation and wildlife as other permitted appropriational uses.

MWD's facilities created extensive recreational opportunities. In 1956, after years of increasing public use, MWD approached the County regarding the establishment of a regional park at Lake Pleasant. Beginning in 1960, the County acquired by deeds, federal patents and state leases land surrounding and underlying Lake Pleasant. The County established Lake Pleasant Regional Park on this land. The documents conveying these interests to the County contain clauses recognizing existing rights of way; the County's interests are subject to MWD's federal grant. The County may continue to operate the park provided it does not interfere with MWD's right of way.

In 1969, the parties entered into a cooperative agreement recognizing the establishment of Lake Pleasant Regional Park and providing the County with "the exclusive right to use the surface of [Lake Pleasant] ... for recreational purposes." The County began to collect user fees to defray the park's operating costs.

In 1984, MWD requested that the 1969 agreement be amended, based on increased costs necessary to comply with federal and state dam safety requirements, to provide for a $2.00 fee for each vehicle entering the park to be collected by the County and remitted to MWD.[1] MWD thought that the park visitors should share the expense of maintaining and operating the dams because these facilities made public recreation possible.

The County initially disputed MWD's legal authority to request a $2.00 fee for public recreational use of Lake Pleasant, but agreed to collect the fee for MWD's benefit after soliciting the county attorney's advice. MWD agreed to pay the County's collection costs and to terminate the agreement when the federal government relieves MWD of responsibility for Waddell Dam.[2] For some undisclosed reason, the County became disenchanted with this arrangement and initiated the present action.

MWD claims the exclusive right to control public recreation and charge a $2.00 entrance fee to Lake Pleasant Regional Park based on federal grants and state water appropriations obtained for the construction and operation of Waddell Dam.[3] The County challenges MWD's right to collect and receive the $2.00 fee contending that its interests, obtained solely for the specific purpose of providing public recrea-

1. The County had been collecting $2.00 per vehicle to improve and maintain the park prior to the agreement. After the 1984 agreement, park patrons were required to pay $4.00 per vehicle—$2.00 to the County and $2.00 to MWD via the County.

2. By its terms, the 1969 contract would terminate in 1994. If the federal government completes the ongoing construction of New Waddell Dam at an earlier date, thus relieving MWD of responsibility for Waddell Dam, the agreement would terminate at that time.

3. Contrary to MWD's assertion, DWR's grant of recreational water rights to MWD does not provide it with an exclusive appropriation. Other concurrent recreational uses are permissible. MWD's recreation appropriation merely assures it continued access to Lake Pleasant for recreation. It does not allow MWD to exclude others who may possess valid recreation appropriations.

tion, provide it with the exclusive right to receive fees associated with the park's use.

We believe that the validity of the agreement and the $2.00 fee hinges on each party's authority to enter into the agreement. As political subdivisions, both MWD and the County must be granted the power to establish, maintain and assess public recreation at Lake Pleasant. Absent such power, the contract would be void. We hold that each party possesses the power to perform these functions. Because we conclude that the agreement and the $2.00 fee are valid, we need not decide the other numerous issues raised in the parties' briefs and the amici curiae's brief regarding water rights and the public trust doctrine.[4] Additionally, we find the arguments addressing the affirmative defenses and standing to be without merit.

## II

## A

■ MWD's powers are controlled by statute and the Arizona Constitution. The legislature has declared that improvement districts such as MWD are municipal corporations. A.R.S. § 48–2901. The powers of a municipal corporation are those that are given it by the state. *Town of Holbrook v. Nutting*, 57 Ariz. 360, 362, 114 P.2d 226, 226–27 (1941); *McClintock v. City of Phoenix*, 24 Ariz. 155, 158, 207 P. 611, 612 (1922), *cited in Local 266 v. Salt River Project Agricultural Improvement & Power District*, 78 Ariz. 30, 38, 275 P.2d 393, 398 (1954). The general rule is that municipal corporations, as legislative creations, possess and exercise only such powers expressly granted, those necessarily or fairly implied by or incident to the powers

expressly conferred, and those essential to the accomplishment of the corporation's declared objectives and purposes. *City of Glendale v. White*, 67 Ariz. 231, 234, 194 P.2d 435, 437 (1948) (quoting 37 Am.Jur. Municipal Corporations, § 112, p. 722); *see also* C. Rhyne, The Law of Local Government Operations, § 4.7, p. 64 (1980).

■ The people of Arizona, through the constitution, and the legislature, by statute, have granted powers to irrigation and water conservation districts comparable to those of municipalities and other political subdivisions of the state. Article 13, section 7 of the Arizona Constitution provides:

> Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improvement districts, now or hereafter organized pursuant to law, *shall be political subdivisions of the State, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this Constitution or any law of the State or of the United States....*

(Emphasis added.) Furthermore, A.R.S. § 48–2978(15) provides:

> In order to accomplish the purposes of the district the board may:
>
> \* \* \* \* \* \*
>
> 15. Provide the district with water, electricity and other public conveniences and necessities, and *engage in any and all activities, enterprises and occupations within the powers and privileges of municipalities generally.*

(Emphasis added.) These provisions allow water conservation districts, once legally

---

**4.** On October 12, 1990, MWD filed a motion to dismiss this appeal based on the federal government's construction of New Waddell Dam and New Lake Pleasant, which is referred to as Plan 6. As part of Plan 6, the federal government, via the Bureau of Reclamation, has entered into contracts with both MWD and the County. All of the County's property interests have been transferred to the federal government. The County will remain the recreation manager at New Lake Pleasant under its June 29, 1990 agreement with the federal government. MWD retained its water rights under its agreement

with the federal government, but also agreed not to assert these rights against the federal government. MWD will be relieved of its responsibility for Waddell Dam when the government is able to provide a replacement water supply. This event will also terminate the agreement between the MWD and the County. Because control of water rights at Lake Pleasant is now governed by these agreements with the federal government and because no public access issue exists, we find these issues, as well as those involving other water rights, to be moot.

established and acting pursuant to the purposes of the district, to engage in many of the activities generally performed by municipalities and other political subdivisions. *See City of Scottsdale v. McDowell Mountain Irrigation and Drainage District,* 107 Ariz. 117, 122–23, 483 P.2d 532, 537–38 (1971).

Municipalities derive their powers from charters or the legislature. *City of Glendale v. White,* 67 Ariz. 231, 234, 194 P.2d 435, 437 (1948). Express powers conferred on a municipality by statute carry with them all implied powers necessary to make them effective. *Walton v. City of Phoenix,* 69 Ariz. 26, 30, 208 P.2d 309, 311 (1949).

■ Municipalities in Arizona have for decades exercised their power to provide public parks to their citizens. A.R.S. § 9-494(A) states:

A city or town may establish and maintain public parks, and acquire, hold or improve real property for that purpose.

Additionally, A.R.S. § 9-276(A)(1) provides that the governing bodies of municipalities may:

Lay out and establish, regulate the use, open, vacate, alter, widen, extend, grade, pave, plant trees or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds.

Necessarily implied in the power to establish and regulate parks and public grounds is the power to assess park users for the acquisition and maintenance of the park. Cities are often the proprietors of public parks, swimming pools or golf courses that charge a nominal fee. *See City of Phoenix v. Moore,* 57 Ariz. 350, 357–58, 113 P.2d 935, 938 (1941).

■ Because municipalities are permitted to establish, maintain and regulate parks and public grounds, and because MWD is entitled to engage in activities or enterprises within the powers and privileges of municipalities, MWD may establish and maintain public parks and may assess the users of these parks.

■ The scope of this power, however, is not unlimited. We do not believe the legislature intended to grant special improvement districts unlimited use of municipal powers or place these districts on a par with other political subdivisions. Our prior decisions have sought to place constraints on the proprietary activities of special improvement districts. The power to engage in the activities of a municipality generally is proper only when acting for a public purpose, *Shaffer v. Allt,* 25 Ariz.App. 565, 569, 545 P.2d 76, 80 (1976), and when the activity is incidental to the primary purpose of the district. *Santa Cruz Irrigation District v. City of Tucson,* 108 Ariz. 152, 153, 494 P.2d 24, 25 (1972); *City of Scottsdale v. McDowell Mountain Irrigation and Drainage District,* 107 Ariz. 117, 122–23, 483 P.2d 532, 537–38 (1971); *City of Mesa v. Salt River Project Agricultural Improvement & Power District,* 92 Ariz. 91, 103–04, 373 P.2d 722, 731 (1962).

■ Providing public recreation facilities clearly serves a public purpose. Additionally, under the facts of this case, we find that providing public recreation is incidental to MWD's primary purpose of delivering irrigation water. In *City of Mesa,* the Arizona Supreme Court held that the power to sell electricity is incidental to the primary purpose of providing irrigation water. 92 Ariz. at 104, 373 P.2d at 731. In *Santa Cruz,* the court held that the power to sell and distribute domestic water is incidental to the primary purpose of providing irrigation water. 108 Ariz. at 153, 494 P.2d at 25. In *Salt River Project Agricultural Improvement & Power District v. City of Phoenix,* 129 Ariz. 398, 402, 631 P.2d 553, 557 (1981), the court held that an improvement district may exercise a proprietary power and sell surplus electricity because this activity is incidental to its primary purpose of producing electricity to reclaim and irrigate arid lands. Just as providing irrigation water by means of a dam system provides the opportunity for electrical generation or the ability to engage in domestic water service, a reservoir provides opportunities for public recreation such as swimming, boating and fishing.

We conclude that based on the legislative authority for MWD to engage in municipal

activities and the ability of municipalities to establish, maintain and assess public recreation, MWD also possesses the power to perform these functions, which are incidental to its primary purpose. Thus, MWD may charge a $2.00 fee per vehicle for public recreational use of Lake Pleasant.

### B

■ The County also has been granted the power to establish and manage public parks. As a political subdivision of the state, the County possesses only those powers that have been expressly, or by necessary implication, delegated to it by the legislature or the constitution. A.R.S. § 11–202(A);[5] *see, e.g., Mohave County v. Mohave–Kingman Estates, Inc.,* 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978); *see also Transamerica Title Insurance Co. v. Cochise County,* 26 Ariz.App. 323, 326, 548 P.2d 416, 419 (1976); *Maricopa County v. Black,* 19 Ariz.App. 239, 241, 506 P.2d 279, 281 (1973).

■ The legislature has granted the County the power to establish, manage and assess the use of public recreational facilities. A.R.S. § 11–932(A) provides:

> [A] county or municipality may purchase, enter into contracts to purchase, acquire by lease or sublease and lease or sublet for any term, or obtain by gift or accept by grant from the United States or other governmental agency real property, within or without its territorial limits, and may hold, maintain and improve it for the use and purpose of a public park, and it may dedicate property already owned to a like purpose. A county or municipality may enter into contracts for any term for the operation of any such public parks. A county or municipality may expend public funds for improvements on lands dedicated, or acquired by lease or sublease for any term, or by agreement or contract to purchase, under the provisions of this section.

The County's acquisition of park property at Lake Pleasant through deeds and patents from the federal government and leases from the state was authorized under this section. Additionally, the $2.00 fee charged by the County for admission to the park is proper when used for improvement and maintenance of the park and its facilities. A.R.S. § 11–935(B)(3) states:

> \* \* \* \* \* \*
>
> B. The [parks and recreation] commission may:
>
> \* \* \* \* \* \*
>
> 3. Prescribe fees to be paid for the use of public parks facilities, which shall not be in excess of the amount required to improve and maintain the parks. Such fees shall be approved by the governing body.

Thus, like MWD, the County possesses the power to establish, manage and assess public recreation at Lake Pleasant.

### C

■ We have held that MWD may establish, manage and assess public recreation because municipalities may engage in these activities and because MWD, by statute, may engage in many of the activities of municipalities. We have also noted that the Arizona Constitution declares special improvement districts, such as MWD, to be political subdivisions with the same rights, privileges and benefits granted to other political subdivisions. Ariz. Const. art. 13, § 7. This status provides an independent basis for MWD to establish, maintain and assess public recreation because the County, as a political subdivision, also possesses these powers.

In *Pinetop–Lakeside Sanitary District v. Ferguson,* 129 Ariz. 300, 302–03, 630 P.2d 1032, 1034–35 (1981), the Arizona Supreme Court accepted the district's argument that because Art. 13, § 7 granted the district exemptions provided to all other political subdivisions, and because the counties received a filing fee exemption as a political subdivision, the district was enti-

---

**5.** A.R.S. § *11–202(A) states:*

  A. Each county is a body politic and corporate, possessing all the powers expressly provided in the Constitution or laws of this state and such powers as are necessarily implied therefrom.

tled to such an exemption. The court of appeals had declined to grant improvement districts full status as political subdivisions finding that Article 13, section 7 of the Arizona Constitution was passed for the sole purpose of granting the districts tax-exempt status.[6] *Pinetop–Lakeside Sanitary District v. Ferguson,* 129 Ariz. 304, 305–06, 630 P.2d 1036, 1037–38 (App.1980).

In reversing the court of appeals decision, the supreme court cautioned that although a sanitary district is given the powers of a political subdivision, it differs from these entities in the purposes for which it was established. Improvement districts are not created to carry out political or governmental functions, even though they are vested with governmental powers such as eminent domain and taxation. Their purpose is to improve local real estate for the benefit of landowners at the landowners' expense. *Pinetop–Lakeside,* 129 Ariz. at 301, 630 P.2d at 1033.

As stated above, any powers exercised by MWD as a municipal corporation must be incidental to its primary purpose. Similarly, the privileges and immunities granted by Article 13, section 7 extend only so far as they have a legitimate relationship to the legal objectives for which the district is organized. *City of Mesa v. Salt River Project Agricultural Improvement & Power District,* 92 Ariz. 91, 97, 373 P.2d 722, 726 (1962).

We hold that MWD possesses the same privileges and immunities as a political subdivision under the facts presented here. Having concluded above that the establishment, management and assessment of public recreation at Lake Pleasant is incidental to MWD's primary purpose of providing irrigation water, we find that Article 13, section 7 of the Arizona Constitution permits MWD to exercise any powers that the County, as a political subdivision, may exercise in operating recreational facilities at Lake Pleasant.

**D**

As we have concluded that both parties may independently establish, manage and assess public recreation at Lake Pleasant, it follows that the parties may also enter into a cooperative agreement for such purposes. The legislature has authorized the County to enter into cooperative agreements with other entities for the operation of public parks. A.R.S. § 11–933(A) provides:

> The governing body of a county or municipality may enter into a cooperative agreement with the United States, a state, the governing body of another county or municipality, or a private legal entity, within or without the state, for the establishment, development, maintenance or administration of a public park.

Again, by constitutional provision, MWD has the powers of a municipality or political subdivision. Ariz. Const. art. 13, § 7. A.R.S. § 11–933(A) authorizes municipalities or counties, both political subdivisions of the state, to enter into these cooperative agreements. *See County of Pima v. School District No. One,* 78 Ariz. 250, 252, 278 P.2d 430, 432 (1954). Thus, MWD and the County have legislative authority to enter into such cooperative agreements.

The agreement entered into by the parties in this case is valid. Neither party is acting in excess of its powers. The legislature specifically envisioned the pooling of resources by the County with other entities in a spirit of cooperation to provide and maintain public recreation facilities for the people of Arizona. Thus, the agreement is one that is authorized as a matter of law. We affirm this part of the superior court judgment.

**III**

In its cross-appeal MWD argues that the superior court incorrectly refused to con-

---

**6.** Article 13, § 7 was added to the state constitution in response to the supreme court's decision in *State v. Yuma Irrigation District,* 55 Ariz. 178, 99 P.2d 704 (1940), which held that an irrigation district was not a municipal corporation and therefore its property was not exempt from tax-

ation. But that is not its sole purpose. *See Pinetop–Lakeside Sanitary District v. Ferguson,* 129 Ariz. 300, 630 P.2d 1032 (1981); *Local 266 v. Salt River Project Agricultural Improvement & Power District,* 78 Ariz. 30, 275 P.2d 393 (1954).

sider an award of attorneys' fees under A.R.S. § 12–341.01(A). A.R.S. § 12–341.01(A) states:

A. In any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts .or statutes that may provide for attorney's fees.

MWD also contends and the superior court found that MWD is entitled to fees under A.R.S. § 12–348 (Supp.1990), which provides:

A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:

1. A civil action brought by the state or a city, town or county against the party.

\* \* \* \* \* \*

E. The court shall base any award of fees as provided in this section on the prevailing market rates for the kind and quality of the services furnished, except that:

\* \* \* \* \* \*

.4. [A]n award of fees against a city, town or county as provided in this section shall not exceed ten thousand dollars.[7]

The superior court decided that A.R.S. § 12–348(E) contained an exclusive $10,-000.00 limitation on fee awards against the county, and therefore limited its consideration of attorneys' fees to this section.

▄▄▄ We find that the superior court erred in failing to consider a fee award under A.R.S. § 12–341.01(A). This action was initiated to construe the provisions of a

contract. The statute allows recovery of fees in any contested action arising from contract. The broad statutory language indicates a legislative intent to allow recovery of attorneys' fees against all unsuccessful parties in a contract action. *New Pueblo Constructors, Inc. v. State*, 144 Ariz. 95, 111, 696 P.2d 185, 201 (1985). Furthermore, the state may be liable for attorneys' fees under this section, *id.* at 112, 696 P.2d at 202, so it would be inconsistent to allow the County, another government body, to escape liability for fees.

▄▄▄ We also hold, however, that MWD is not entitled to fees under A.R.S. § 12–348. As noted above, special improvement districts constitutionally receive the same exemptions as other political subdivisions of the state. Ariz. Const. art. 13, § 7; *see Pinetop–Lakeside Sanitary District v. Ferguson*, 129 Ariz. 300, 302–03, 630 P.2d 1032, 1034–35 (1981). States, cities, towns and counties, all political subdivisions, are not eligible for an attorneys' fee award under this section. A.R.S. § 12–348(A). Thus, MWD is also ineligible for a fee award. *But see Flood Control District of Maricopa County v. Conlin*, 148 Ariz. 66, 71, 712 P.2d 979, 984 (App.1985) (district is not an entity that may be required to pay attorneys' fees under A.R.S. § 12–348).[8]

This result is supported by the legislative findings and purpose preceding A.R.S. § 12–348. These findings indicate that this provision is intended to apply to situations involving the disparity of resources often present in actions involving private individuals or entities pitted against governmental subdivisions in the judicial process. They state:

A. The legislature finds that certain individuals, partnerships, corporations and labor or other organizations may be deterred from seeking review of or defend-

---

7. While this appeal was pending the Arizona Legislature amended A.R.S. § 12–348. As part of the amendment the $10,000.00 limitation formerly contained in A.R.S. § 12–348(D)(3) was moved to A.R.S. § 12–348(E)(4). The amendment does not affect our decision as the wording of the subsection was unchanged. *See* Laws 1990, Ch. 360, § 1.

8. Although the rationale of *Conlin* is somewhat inconsistent with ours, the result of the two opinions is that special improvement districts can neither collect nor be liable for attorneys' fees under A.R.S. § 12–348.

ing against unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government.

B. The purpose of this section is to reduce the deterrents and the disparity by entitling prevailing parties to recover an award of reasonable attorney fees, expert witness fees and other costs against the state.

Laws 1981, Ch. 208, § 1.

This legislative declaration warrants special consideration because express legislative findings are quite rare in Arizona. *New Pueblo Constructors, Inc. v. State,* 144 Ariz. 95, 112, 696 P.2d 185, 202 (1985). This case does not present a disparate resource problem; it does not involve a private individual or even a private entity challenging the government. This case involves two political subdivisions contesting the validity of an agreement. We find that the legislative intent and the express wording of the statute exempt political subdivisions from receiving fee awards under A.R.S. § 12-348. As MWD is a political subdivision, it is exempt from receiving an award of attorneys' fees under this section.

### IV

 MWD has also requested attorneys' fees on appeal under both A.R.S. § 12-341.01(A) and A.R.S. § 12-348. Based on our conclusion above, we find that MWD may request fees only under A.R.S. § 12-341.01(A). Fees under this statute are available on appeal. *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 133, 639 P.2d 321, 323 (1982). Any award of attorneys' fees pursuant to A.R.S. § 12-341.01(A), of course, is discretionary. *Lacer v. Navajo County,* 141 Ariz. 392, 395, 687 P.2d 400, 403 (App. 1984).

MWD is entitled to its attorneys' fees pursuant to A.R.S. § 12-341.01(A). Upon

its compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure, we will consider a reasonable fee award.

### V

The judgment of the superior court is affirmed. The award of attorneys' fees under A.R.S. § 12-348 is reversed, and the case remanded to the superior court for consideration of an attorneys' fee award for MWD under A.R.S. § 12-341.01(A). For the above-stated reasons, MWD's request for attorneys' fees on appeal also will be considered only under A.R.S. § 12-341.-01(A).

VOSS, P.J., and McGREGOR, J., concur.