IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MOUNTAINSIDE MAR, LLC, et al., *Plaintiffs/Appellants*,

*v.*

CITY OF FLAGSTAFF, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0002
FILED 6-30-2022

Appeal from the Superior Court in Coconino County
Nos. S0300CV201700177, S0300CV201800169, S0300CV202000305
The Honorable Ted Stuart Reed, Judge

**AFFIRMED**

COUNSEL

Berry Riddell, LLC, Scottsdale
By Jeffrey D. Gross
*Counsel for Plaintiffs/Appellants*

Dickinson Wright, PLLC, Phoenix
By Timothy M. Strong, Vail Cloar, Bennett E. Cooper
*Counsel for Defendants/Appellees*

League of Arizona Cities and Towns, Phoenix
By Nancy L. Davidson
*Counsel for Amicus Curiae League of Arizona Cities and Towns,*
*City of Avondale, Town of Queen Creek, City of Show Low*

---

## OPINION

Presiding Judge D. Steven Williams delivered the opinion of the court, in which Vice Chief Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**         Municipalities are statutorily authorized to own, acquire, construct, and operate public utilities, including water and wastewater systems. In this appeal, we examine whether a municipality may lawfully assess fees under A.R.S. §§ 9-511 and -511.01 to offset costs associated with new or expanded infrastructure required by new connections to the municipality's water and wastewater systems. Because we conclude a municipality's power to adopt fees is necessarily implied in the express powers to own and operate water and wastewater systems and to increase water and wastewater rates, fees, or service charges, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         For more than thirty years, the City of Flagstaff ("City") has imposed an initial connection fee on all new customers connecting to the City's water and sewer systems. These fees, which the City refers to as "capacity fees," are assessed upon a customer's initial connection to the City's water or sewer systems and are used to offset the cost of construction of new or expanded infrastructure, such as new wells, tanks, and added plant capacity necessitated by the new connection.[1] Capacity fees are assessed on both developers and non-developers alike, including, for example, residences that first used a septic system but later connected to the City's water and/or sewer systems. The City calculates water capacity fees based upon the size of the customer's water meter. Flagstaff City Code § 7-03-001-0011(B). Sewer capacity fees are calculated based on the type of customer, i.e., residential or non-residential. Flagstaff City Code § 7-02-001-0041(B)(2). The City charges all residential units, both single and

---

[1] Capacity fees are also assessed on customers who increase their water meter size or cause an expansion or modification of the customer's building or facility which results in an increased contribution to the sewer system. Flagstaff City Code §§ 7-03-001-0011(A)(2) (water system) and 7-02-001-0041(B)(1) (sewer system).

multi-family, $3,723.00 per unit in sewer capacity fees. *Id.* The City assesses these fees under authority of A.R.S. §§ 9-511 and -511.01.

¶3         Mountainside MAR, LLC and its related entity, Trailside MAR, LLC (collectively, "Mountainside") developed two apartment complexes in Flagstaff. As a condition precedent to connecting the developments to the City's water and sewer systems, the City assessed approximately $1,500,000.00 in water and sewer capacity fees. Although Mountainside paid the fees, they did so under protest, arguing the fees were invalid because they were in fact "development fees" that had not been adopted in accordance with A.R.S. § 9-463.05 and thus could not lawfully be assessed.[2] On this basis, Mountainside filed three lawsuits against the City and certain individual defendants seeking a return of the fees they paid, as well as mandamus relief. The parties stipulated to consolidating the cases.

¶4         The City moved to dismiss the actions for failure to state a claim, arguing the capacity fees were not development fees subject to § 9-463.05 and that the City could lawfully assess the capacity fees under § 9-511 and § 9-511.01. Mountainside moved for summary judgment, arguing the fees were invalid and could not be lawfully assessed. After oral argument on both motions, the superior court agreed with the City that it had authority under § 9-511 and § 9-511.01 to "charge fees of first-time connections to its water and sewer utility systems." The court granted the motion to dismiss and entered judgment in favor of the City.

¶5         This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶6         We review de novo the dismissal of a complaint under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We also review de novo issues of statutory interpretation. *Nicaise v. Sundaram*, 245 Ariz. 566, 567, ¶ 6 (2019).

¶7         The parties agree that capacity fees are used to offset costs associated with new or expanded infrastructure required by new

_____

[2] Section 9-463.05 authorizes development fees to offset costs to the municipality associated with providing necessary public services to a development and imposes requirements and conditions for imposing such fees.

connections and generally agree the City possesses the power to make such assessments. The parties disagree, however, as to the statutory authority under which the City may impose such assessments.

¶8 Mountainside argues § 9-463.05 establishes the exclusive means by which the City may lawfully assess capacity fees. Accordingly, Mountainside contends the City, by failing to comply with § 9-463.05—which requires the City to, among other things, prepare and publish an infrastructure improvement plan and hold public hearings before imposing a development fee—lacked the legal authority to impose and collect fees from Mountainside. The City counters that it lawfully assessed the fees under § 9-511 and § 9-511.01. Thus, the central question we must resolve is whether the City may lawfully assess capacity fees under § 9-511 and § 9-511.01.

¶9 When interpreting a statute, our goal is to find and give effect to legislative intent. *Ariz. Chapter of the Associated Gen. Contractors of Am. v. City of Phoenix*, 247 Ariz. 45, 47, ¶ 7 (2019). We look first to the statute's plain language as the best indicator of legislative intent, *Glazer v. State*, 244 Ariz. 612, 614, ¶ 9 (2018), giving the statute's words their ordinary meaning, *Mail Boxes, etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121 (1995), and applying a sensible construction to avoid absurd results, *Collins v. State*, 166 Ariz. 409, 415 (App. 1990). Unless a statute is ambiguous, we do not resort to secondary statutory interpretation principles. *Glazer*, 244 Ariz. at 614, ¶ 9.

¶10 A municipality derives its powers from its charter or the legislature. *Maricopa Cnty. v. Maricopa Cnty. Mun. Water Conservation Dist. No. 1*, 171 Ariz. 325, 329 (App. 1991). As legislative creations, municipalities possess and may exercise only those powers expressly granted them by the legislature, together with those powers "necessarily or fairly implied by or incident to the powers expressly conferred." *Id.* at 328.

¶11 Municipalities, such as the City, are statutorily authorized to own, acquire, construct, and operate public utilities including water and wastewater systems. A.R.S. § 9-511. A municipality's exercise of this power, however, is restricted by § 9-511.01. Section 9-511.01(A) provides:

> A municipality engaging in a domestic water or wastewater business shall not increase any water or wastewater rate or rate component, fee or service charge without complying with [several statutory procedures].

¶12 Mountainside does not claim the City failed to comply with the several statutory requirements of § 9-511.01, but instead argues that

although § 9-511.01 permits the City to *increase* water or wastewater rates, fees, or service charges, it "does not authorize [the City] to *adopt* any fees" in the first instance. (Emphasis added.) Under Mountainside's interpretation, the City lacks the power to adopt the very water or wastewater rates, fees, or service charges it may increase under § 9-511.01. We reject this interpretation of the statute. *See Collins*, 166 Ariz. at 415 (refusing to accept an interpretation of a statute that would lead to an absurd result).

¶13 The power to adopt fees is necessarily implied in the powers to own and operate water and wastewater systems and increase water and wastewater rates, fees, or service charges. *See Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction*, 198 Ariz. 493, 498, ¶ 10 (App. 2000) (noting that municipalities "may exercise . . . those powers that arise by necessary implication out of those that are expressly granted"); *Maricopa Cnty. Mun. Water Conservation Dist. No. 1*, 171 Ariz. at 329-30 (concluding that because the municipality possessed the express power to establish, maintain, and regulate public parks, it also possessed the implied power to perform those functions, including the assessment of fees on park users).

¶14 Moreover, we find unpersuasive Mountainside's argument that § 9-463.05 establishes the exclusive means by which the City may lawfully assess capacity fees. While § 9-463.05 establishes a means in which a municipality "may assess development fees to offset costs to the municipality associated with providing necessary public services to a development," that statute does not prohibit a municipality from assessing utility fees under § 9-511.01 and specifically contemplates other sources of revenues and fees from developments. *See* A.R.S. § 9-463.05(E)(7) (requiring a municipality to provide a "forecast of revenues generated by new service units other than development fees, which shall include . . . the capital recovery portion of utility fees attributable to development").

¶15 Mountainside asks this court to consider the legislative history of the statutes as a basis to support their proposed reading of the statutes, an exercise we need not undertake. *See, e.g., Glazer*, 244 Ariz. at 614, ¶ 9. We similarly refuse the City's invitation to consider the legislature's rejection of a proposed amendment to § 9-511.01 that would have referenced § 9-463.05. H.B. 2391, Introduced Version, 2016 52nd Leg., 2d Reg. Sess. (proposed amendment would have required "any water or wastewater rate, rate component, fee or service charge assessed to fund new infrastructure or capital improvements . . . comply with the requirements of [A.R.S. §] 9-463.05"); *compare J.D. v. Hegyi*, 236 Ariz. 39, 43, ¶ 21 (2014) (rejecting an interpretation of a statute that would be "in tension with the

fact that the legislature . . . rejected a proposed amendment" that would support such an interpretation), *with City of Flagstaff v. Mangum*, 164 Ariz. 395, 401 (1990) (refusing to "speculate on the intent of the legislature in failing or refusing to adopt clarifying amendments [to a statute]" because "one could also argue that the legislature considered the proposed legislation unnecessary").

**¶16** Based upon the statutory authority for the City to own and operate water and wastewater systems, including to increase water and wastewater rates, fees, or service charges under § 9-511 and § 9-511.01, we hold that the City also possesses the implied powers necessary to perform those functions, including to adopt and assess fees to offset costs associated with new or expanded infrastructure required by new connections to the City's water and wastewater systems. Because the City had power under § 9-511 and § 9-511.01 to assess capacity fees on Mountainside, dismissal of the complaints was proper, as was the denial of Mountainside's motion for summary judgment and request for mandamus relief.

## CONCLUSION

**¶17** We affirm. Because the City is the prevailing party, we decline to award Mountainside its attorneys' fees and costs under A.R.S. §§ 12-348(A) and -2030.

