James S. SHERIDAN, Plaintiff

v.

INTERN. BROTH. ELECTRICAL
WORKERS, LOCAL 455.

Civil Action No. 95–30222–MAP.

United States District Court,
D. Massachusetts.

Sept. 5, 1996.

Daniel J. Sheridan, Sheridan & Sheridan, South Hadley, MA, Bruce N. Cameron, National Right to Work Legal Defense Foundation, Springfield, VA, for Plaintiff.

John Connor, Marshall T. Moriarty, Moriarty and Connor, Springfield, MA, for Defendant.

PONSOR, District Judge.

Upon *de novo* review the report and recommendation is adopted in its entirety. Defendant's motion is DENIED, and plaintiff's ALLOWED. These rulings dispose of all cognizable issues. Moreover, the defendant's future obligations are spelled out with reasonable clarity—certainly all clarity possible at this juncture. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS AND FOR SANCTIONS (Docket No. 05) and PLAINTIFF'S CROSS–MOTION SUMMARY JUDGMENT (Docket No. 08)*

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 1983, Plaintiff James Sheridan ("Plaintiff") commenced this action against the Defendant International Brotherhood of Electrical Workers, Local 455 (the "Union"), asserting that his constitutional rights were violated when the Union required that he pay a certain compulsory fee without affording him the procedural pro-

tections required by the Constitution, as interpreted by the United States Supreme Court in *Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). This compulsory fee, referred to herein as an "agency service fee," may not be required of nonunion employees for activities unrelated to collective bargaining. The Union's motion to dismiss and Plaintiff's cross-motion for summary judgment have been referred to this Court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates in United States District Court for the District of Massachusetts. See 28 U.S.C. § 636(b)(1)(B). At oral argument, Plaintiff, through counsel, withdrew his motion to strike the Union's motion to dismiss. (Docket No. 07).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case, although somewhat lengthy, are straightforward, consisting primarily of letters between Plaintiff and the Union. Plaintiff is employed by the Massachusetts Municipal Wholesale Electric Co. ("MMWEC") and is a member of the collective bargaining group represented by the Union. On October 26, 1993, Plaintiff wrote the Union's business manager, informing him that he wished to convert his status from a full dues paying member to an agency service fee member only. Plaintiff requested documentation confirming that the agency service fee had been contractually set at 75% of full dues. Complaint, at Exhibit B (letter from Plaintiff to Defendant, October 26, 1993).

On December 1, 1993, having received no response, Plaintiff again wrote the Union's business manager, this time stating his intention to cancel his payroll deduction for Union dues. In addition, Plaintiff demanded a complete copy of the Union's records purportedly establishing a ratification of the agency service fee, as well as an independent audit of the Union's revenues and expenditures—specifically for "matters other than bona fide collective bargaining, grievance handling, or other contract administration." A copy of the letter was sent to MMWEC, whereupon

MMWEC informed the Union on December 6, 1993 that, given Plaintiff's withdrawal from the Union, it would withhold his agency service fee.

On December 10, 1993, Plaintiff, this time through counsel, protested MMWEC's stated intention to withhold the agency service fee because the Union neither demanded payment of that fee nor provided the requested documentation. On December 13, 1993, the Union, again through counsel, informed Plaintiff that his resignation from the Union had been approved on November 23, 1993. Counsel also informed Plaintiff that the agency service fee was $33.83 per month and that less than one percent of the union dues was utilized for non-representational purposes. Complaint at Exhibit F (letter from Marshall T. Moriarty, Esq. to Daniel Sheridan, Esq.). While the correspondence referenced an attached letter, no such letter was attached or enclosed. Complaint at Exhibit G. (December 29, 1993 letter from Daniel Sheridan, Esq. to Marshall T. Moriarty, Esq.).

Subsequently, on January 13, 1994, the Union informed Plaintiff by letter that it would *not* pursue an agency service fee from him and therefore declined Plaintiff's offer to place a monthly sum of $30.89 into a jointly held escrow account, although it reserved the right to pursue such fee in the future. Included in this letter was a December 9, 1993 two-page letter from the Union's accountant certifying "expenditures not reasonably related to collective bargaining." Complaint at Exhibit H. By letter dated February 17, 1994, however, the Union reversed its position and demanded that Plaintiff pay a monthly agency service fee of $25.64. Complaint at Exhibit J. The letter indicated that the amount "represents the agreed to amount of the agency service fee between [MMWEC] and the Union" and included a copy of the Union accountant's letter previously provided.

On March 14, 1994, Plaintiff acknowledged receipt of the documentation and noted his continued objection to its adequacy. In addition, Plaintiff agreed to pay $25.64 monthly into a jointly administered escrow account pending resolution of the agency service fee issue by the Massachusetts Labor Relations

Commission ("the MLRC"). Shortly thereafter, on March 30, 1994, Plaintiff filed a charge with the MLRC in which he asserted that the Union had failed to produce adequate proof of the validity or appropriateness of the agency service fee.

In response, the Union faxed a request to Plaintiff on March 31, 1994 that he identify the portion of the agency service fee he disputed and the additional information he specifically needed in order to make an informed judgment. Complaint at Exhibit N (March 31, 1994 letter from Moriarty to Sheridan, at Exhibit N). Plaintiff responded that same day, stating that he was unable to identify which particular expenditures he was challenging without knowing what the Union's expenditures had been.

On April 9, 1994, the Union, in a lengthy letter, pointed to Plaintiff's filing of an unfair labor practice and noted that the requested information had been provided. The Union further asserted that, under both MLRC and National Labor Relations Board guidelines, the Union was obligated to furnish financial information only *after* a party objects. Nevertheless, the Union provided Plaintiff with additional information, including reports to the Massachusetts Department of Labor and Industries and the United States Department of Labor. Complaint at Exhibit P. None of those reports, however, required or included the signature or verification of an auditor.

On April 25, 1994, Plaintiff acknowledged the April 9, 1994 letter as partially adequate, but reasserted his demand for information. On May 13, 1994, the Union resubmitted to Plaintiff the information provided on April 9, 1994. The Union also asked that, if Plaintiff still felt the document production was inadequate, he specify what additional information he was seeking.

On November 3, 1994, the MLRC issued a complaint against the Union charging that the Union's agency service fee demand was both invalid and excessive. On or about September 13, 1995, however, the MLRC dismissed Plaintiff's charges, noting that his constitutional claims should be before a court. Soon thereafter, on October 24, 1995, Plaintiff filed the present action in this Court.

Plaintiff's complaint asserts violations of the United States Constitution because the Union's February 17, 1994 "agency fee demand" did not comport with minimum procedural requirements. Specifically, Plaintiff alleges that he was not provided with either an independent audit of the financial records of the Union or a breakdown of chargeable (agency service fee) expenses and non-chargeable (non-agency fee) expenses. The complaint also alleges that Plaintiff was not informed of his right to challenge the procedures involved, the amount of the agency fee demand or his right to withhold payment of any fees pending the resolution of any objection he might file. The Union's motion to dismiss and Plaintiff's cross-motion for summary judgment shall be addressed in turn.

### III. THE UNION'S MOTION TO DISMISS

The Union makes three arguments, only the first of which shall be treated in the context of its motion to dismiss.[1] In particular, the Union argues that Plaintiff's claims should be dismissed in their entirety because the Union's conduct cannot amount to state action under color of state law. See 42 U.S.C. § 1983. The Union distinguishes *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), upon which Plaintiff primarily relies, see discussion *infra*, as well as *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), relied upon by *Hudson*, as cases that involved clear "state action," i.e., agreements between a municipality and a collective bargaining unit. In contrast, the Union claims, MMWEC, although a "political subdivision" of the state, see M.G.L. ch. 164, is privately funded and services its own bonds.

---

**1.** The remaining arguments, supported by documents in the record, will be treated as a motion for summary judgment, as the Union alternatively requests, and addressed separately. See *Dominique v. Weld*, 73 F.3d 1156, 1158–59 (1st Cir.1996); *Smith v. Massachusetts Dept. of Correction*, 936 F.2d 1390, 1394 (1st Cir.1991). In fact, the Union re-asserts its two latter arguments in opposition to Plaintiff's "cross-motion" for summary judgment.

In making its claim, the Union relies primarily upon *Gorenc v. Salt River Project Agr. Imp. & Power Dist.,* 869 F.2d 503 (9th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989), in which the Ninth Circuit refused to allow a § 1983 action against an electric company for terminating its employee even though the company was designated a political subdivision under the Arizona state constitution. In addition, the Union relies on the appendix to M.G.L. ch. 164, which states that M.G.L. chs. 150A, 150B and 150C, which legislate *private* employment relations, apply to MMWEC, but that M.G.L. ch. 31, the civil service statute, does not. In sum, the Union asserts, MMWEC's actions do not involve state action for jurisdictional purposes.

## A. MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is designed to test the legal sufficiency of the complaint. "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Intern. Broth. of Elect. Workers,* 905 F.2d 35, 37 (2nd Cir.1990). A motion to dismiss requires the Court to accept "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). See also, *Pihl v. Massachusetts Dept. of Educ.,* 9 F.3d 184, 187 (1st Cir.1993). The First Circuit has stated that it will affirm a dismissal for failure to state a claim only if it appears, according to the facts alleged, that the claimant cannot recover on any viable theory. *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 998 (1st Cir.1992). However, as the First Circuit has explained, "[d]espite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 51 (1st Cir.1990). See also *Shaw v. Digital Equip-*

*ment Corp.,* 82 F.3d 1194, 1216 (1st Cir. 1996).

## B. DISCUSSION

As the Union concedes, at least in certain circumstances, private individuals or groups may be held to answer for constitutional violations pursuant to Section 1983 where there is a sufficient "nexus" between the state and the challenged action. See *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico,* 84 F.3d 487 (1st Cir.1996); *Johnson v. Orr,* 780 F.2d 386 (3rd Cir.), *cert. denied sub nom. McDaniel v. Johnson,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). See also *Rodriguez-Garcia v. Davila,* 904 F.2d 90, 96 (1st Cir.1990) (relevant inquiry consists of whether there was an elaborate financial or regulatory nexus between the defendant and the government or an assumption of a traditional public function, or a symbiotic relationship involving the sharing of profits). This nexus generally involves the existence of a relationship between actor and the state such that the actor's conduct can be fairly attributed to the state. See *Lorentzen v. Boston College,* 440 F.Supp. 464 (D.Mass.1977), *aff'd,* 577 F.2d 720 (1st Cir.1978), *cert. denied,* 441 U.S. 917, 99 S.Ct. 2021, 60 L.Ed.2d 391 (1979). See also *Martin v. Delaware Law School of Widener University,* 625 F.Supp. 1288 (D.Del.1985), *aff'd,* 884 F.2d 1384 (3rd Cir.), *cert. denied,* 493 U.S. 966, 110 S.Ct. 411, 107 L.Ed.2d 376 (1989). Whether there is a sufficient nexus between the state and the actor's conduct to constitute state action must be determined on a case-by-case basis. *Bellnier v. Lund,* 438 F.Supp. 47 (N.D.N.Y. 1977).

Despite the Union's argument to the contrary, MMWEC is not just another private electric utility, as was the case in *Gorenc.* There, the utility was "owned and operated by private individual landowners ... [and] not operated for the benefit of the general public but for the benefit of the private landowners in the district." *Gorenc,* 869 F.2d at 506. MMWEC, on the other hand, is not privately owned. Rather, as the Massachusetts Supreme Judicial Court ("SJC") has noted, MMWEC is in fact "a

*public instrumentality of the Commonwealth* created in 1975 for the purpose of financing the purchase of electric power by utilities within and outside of Massachusetts.... Its membership is made up of cities and towns in Massachusetts having municipal electric departments." *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers,* 411 Mass. 39, 577 N.E.2d 283, 285 (1991) (emphasis added). Thus, instead of being a private corporation which is granted a monopoly and regulated by the state, as was the case in *Gorenc,* "MMWEC was established as a public corporation for the purpose of joint action and planning, which is an 'essential public function.'" *Massachusetts Mun. Wholesale Elec. Co. v. Massachusetts Energy Facilities Siting Council,* 411 Mass. 183, 580 N.E.2d 1028, 1033 n. 7 (1991). Moreover, as the SJC noted on an earlier occasion, MMWEC "is a public power corporation with no stockholders to bear the risks associated with power plant construction," *Fitchburg Gas & Elec. Light Co. v. Department of Public Utilities,* 394 Mass. 671, 477 N.E.2d 372, 379 n. 8 (1985), unlike the Salt River project in *Gorenc.* Indeed, in Article II of the Collective Bargaining Agreement between MMWEC and the Union, the Union expressly recognized MMWEC "as a public corporation and political subdivision of the Commonwealth of Massachusetts." Complaint, Exhibit CC.

In sum, there is clearly a sufficient nexus between the state and MMWEC to find state action in the present matter. Accordingly, Plaintiff has sufficiently alleged in his complaint that MMWEC is a political subdivision of the Commonwealth of Massachusetts and that it entered into a collective bargaining agreement with the Union that contained an agency fee clause. As a result, the Union's 12(b)(6) motion, to the extent it asserts the absence of state action, should be denied.[2]

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The Union argues that, even if state action is found, the Court should dismiss the complaint "pursuant to summary judgment." According to the Union, (1) Plaintiff has failed to state a good faith belief that his union dues were used for purposes which violated his constitutional rights; (2) the Union is under no obligation to (a) provide an independent audit of its financial records, (b) inform Plaintiff of his right to challenge the procedures for determining agency service fees, or (c) advise Plaintiff of his right to withhold such agency service fees; (3) the Union has provided Plaintiff with the requisite breakdown of expenses; (4) any violation on the part of the Union was technical and not a substantive violation of Plaintiff's constitutional rights; and (5) Plaintiff has failed to aver harm from the Union's alleged failure to disclose.

Plaintiff, on the other hand, argues in his cross-motion that he is entitled to summary judgment on his constitutional claims. According to Plaintiff, the Supreme Court requires that unions follow "carefully tailored" procedures in establishing nonmember fees: that the nonmember "be given sufficient information to gauge the propriety of the union's fee," that the nonmember be informed of a "reasonably prompt" opportunity to challenge the amount of the fee before an impartial decisionmaker, and that a mechanism be put into place to ensure that objectors' money not used for nonchargeable activities. *Hudson,* 475 U.S. at 301–03, 306, 307, 310, 106 S.Ct. at 1073–74, 1075, 1076, 1077. In essence, Plaintiff alleges that the Union's actions have not lived up to the requirements of *Hudson.*

### A. SUMMARY JUDGMENT STANDARD

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino,* 71 F.3d 29,

---

**2.** Accordingly, it is unnecessary for the Court to address Plaintiff's alternative arguments made in opposition to the motion to dismiss, namely, that either the security provisions in the Union's collective bargaining agreement or the Union's status as the exclusive bargaining representative triggers the state action requirement. See *Linscott v. Millers Falls Co.,* 440 F.2d 14, 16–17 (1st Cir.), *cert. denied,* 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971); *Leahy v. Local 1526, American Federation of State, County & Mun. Employees,* 399 Mass. 341, 504 N.E.2d 602, 607 (1987).

33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The Court must view the evidence as a whole, rather than in isolation. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party, *Santiago–Ramirez v. Secretary of Dept. of Defense of U.S.*, 62 F.3d 445, 446 (1st Cir.1995), who bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact, *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Nav. Co.*, 974 F.2d 221, 223 (1st Cir.1992).

### B. DISCUSSION

The instant case is ripe for summary judgment since there are no genuine issues of material fact standing in the way of the Court's addressing the questions of law raised by both parties. Indeed, neither party expends much effort in disputing the facts explicated above. Thus, both parties appear ready to have the Court rule on the legal questions before it—not only because they have both filed motions for summary judgment, but because the dispute is in essence a principled legal conflict.

■ The Supreme Court in *Hudson* recognized two distinct interests applicable to the case at hand: first, the nonunion employee's first amendment rights not to be coerced in contributing funds which further a union's political activities which he does not wish to support and, second, the union's interest in establishing a rational system of labor negotiations to promote labor peace. *Id.* at 301–02, 106 S.Ct. at 1073–74. To serve these interests, *Hudson* requires unions to develop procedures which further three basic objectives. First, a union must provide a nonunion employee with financial information about the union's expenditures and the opportunity to object to the use of his fees for activities unrelated to collective bargaining. Second, a union must have safeguards in place ensuring that fees are not improperly used, and possibly collected, once an objection has been filed. Third, a nonunion objector must have the ability to challenge, before an impartial decision-maker, a union's calculation of that portion of its expenditures spent on activities related to collective bargaining.

In the present matter, the Union asserts that Plaintiff's case ought not be in court—although it is less precise as to the means by which the case should be terminated. As indicated, the Union has fashioned its motion as one to dismiss pursuant to Rule 12(b)(6) *or* "pursuant to summary judgment." While the exact meaning of this latter alternative is unclear to the Court, the bottom line is not: the Union believes that its response to Plaintiff's request to determine the agency service fee was constitutionally sufficient and that any violations of the requirements of *Hudson* were technical. Indeed, at oral argument, the Union conceded certain inadequacies in its procedures and, appropriately, sought a way to resolve the litigation then and there.

Plaintiff, on the other hand, has pursued his motion, as he rightfully may, in order to vindicate his position and to obtain guidance from the Court as to the precise parameters of *Hudson*. Plaintiff's vindication, of course, is necessarily limited to the declaratory relief sought in his complaint (Docket No. 01), namely, "that the agency fee demand made by the union upon [Plaintiff] is inadequate as a matter of law; [and] that the union and its affiliates have failed to disclose to [Plaintiff] or to implement on his behalf the minimum procedures necessary to protect his constitutional rights as set forth in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986)."

The guidance sought by Plaintiff in his motion, however, is an entirely different matter. Thus, even were the Court to find that Plaintiff is entitled to judgment reflecting the declarations he seeks, the guidance provided must *per force* be limited to those matters in actual controversy—in contrast to the comprehensive instructions requested by Plaintiff at oral argument. See *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) ("for adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are requisite."). Within the parameters of the complaint, therefore, this case and controversy revolves around the following three *Hudson* requirements only: (1) whether Plaintiff was informed of his right to challenge the amount of the fee before an impartial decisionmaker; (2) whether a mechanism was established by the Union to ensure that Plaintiff's dues were not used for nonchargeable activities; and (3) whether the Union provided adequate disclosure to Plaintiff of the major categories of its expenses.

Overall, it appears from the uncontroverted facts that the Union insufficiently understood these three *Hudson* requirements at the time its dispute with Plaintiff arose. In particular, as indicated, the Union as much as conceded at oral argument the inadequacy of its position regarding the first two requirements. Thus, the Union neither informed Plaintiff of his right to challenge the fee before an impartial decision-maker nor established a mechanism by which a nonmember's fees would not be used for political purposes. In fact, Plaintiff was the one who offered to have his dues escrowed pending resolution of the controversy. As the Union must necessarily acknowledge, *Hudson* specifically requires that objections be "addressed in an expeditious, fair and objective manner" by an impartial decisionmaker, *id.* at 307, 106 S.Ct. at 1076, and that disputed fees be escrowed pending resolution of the challenge, *id.* at 309–10, 106 S.Ct. at 1077–78. As the first two *Hudson* requirements were not met, Plaintiff is entitled to summary judgment with respect to these procedural inadequacies.

In a similar vein, it appears that the Union proceeded, mistakenly, as if Plaintiff must describe *his* objections to the agency service fee *before* receiving sufficient financial information from the Union. *Hudson* is clear, however, that nonmembers, as "potential" objectors, must be given adequate information about the basis of the agency service fee *prior to* actually filing their objections. Thus, the Supreme Court's determination that "potential objectors be given sufficient information to gauge the propriety of the union's fee," *Hudson*, 475 U.S. at 306, 106 S.Ct. at 1075, includes the assumption that the formal objection need not be made until receipt of an adequate financial disclosure. See *Tierney v. City of Toledo*, 917 F.2d 927, 933–34 (6th Cir.1990) (citing its previous decision in the same matter, 824 F.2d 1497, 1503 (6th Cir.1987)). Such disclosure is necessary in order for the nonunion employee "to enter an intelligent but informed objection to the use of his service fee if he desires." *Damiano v. Matish*, 830 F.2d 1363, 1370 (6th Cir.1987). While this may be a time consuming and expensive process for a union, it is only triggered by the union's decision in the first instance to collect a service fee from a nonmember. See *Tierney*, 824 F.2d at 1503, n. 2. See also *Andrews v. Education Ass'n. of Cheshire*, 829 F.2d 335, 339 (2nd Cir.1987) ("the procedures mandated by *Hudson* are to be accorded all nonmembers of agency shops regardless of whether the union believes them to be excessively costly.")

Unlike the first two *Hudson* requirements, however, the question regarding the third requirement—the manner and adequacy of the Union's financial disclosure—is sharply contested by the parties. In essence, Plaintiff asserts that the Union has failed to disclose the major categories of expenses or provide verification by an independent auditor. In response, the Union considers its financial disclosures adequate and contests the obligation that its disclosures be verified by an auditor. As indicated, these are legal, not factual, disputes.

*Hudson* is clear that, instead of letting a union demand a fee without explanation or justification, a potential objector must

"be given sufficient information to gauge the propriety of the union's fee." *Hudson,* 475 U.S. at 306, 106 S.Ct. at 1075. A union cannot merely set a fee arbitrarily and then, perhaps, identify the political expenses not included in the amount. *Hudson* requires more: while "[t]he union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, ... adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." *Id.* at 306–07 and n. 18, 106 S.Ct. at 1076 and n. 18. While this footnote, standing alone, does not provide much guidance as to either the degree of financial specificity or the actual role of the auditor, the Court cannot help but conclude in the present matter that the Union's efforts fell short of *Hudson* in both respects—despite the fact that the footnote has been interpreted in myriad ways.

With respect to the necessary financial information, for example, the Second Circuit in *Andrews* found that the notice provided by a Connecticut teachers union met the constitutional requirements of *Hudson* when it included the end of the year financial reports for the local unions and their national affiliates, a list of expenditures for each major category of chargeable activities and the projected budgets for the coming year. *Andrews,* 829 F.2d 335, 340. According to the court, this notice constituted "an adequate explanation of the basis for the fee" because *Hudson* only required that the union provide "categories of major expenses," not "an exhaustive and detailed list of all its expenditures." *Id.* at 339 (citation and internal quotations omitted). Similarly, on remand from the Supreme Court, the district court in *Hudson* emphasized that the union's notice need not be a detailed breakdown of fees and costs, but need only be sufficient for nonmembers to gauge the propriety of the fee. *Hudson v. Chicago Teachers Union,* 699 F.Supp. 1334, 1341 (N.D.Ill.1988). See also

*Gilpin v. American Federation of State, County, and Mun. Employees, AFL–CIO,* 875 F.2d 1310, 1316 (7th Cir.), *cert. denied,* 493 U.S. 917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989) (notice of expenditures found sufficient).

In the present matter, the Union simply provided a listing of expenditures which it considered *un*related to collective bargaining. Initially, Plaintiff had in fact only asked the union to "identify all expenditures for matters *other than* bona fide collective bargaining, grievance handling, or other contract administration," Complaint, Exhibit C (emphasis added), although he also requested an independent auditor's financial statement of the Union's revenues and expenses, id. While the phrasing of Plaintiff's request may have been confusing to the Union, it is apparent that the "major categories of [chargeable] expenses," *Hudson,* 475 U.S. at 306–07, n. 18, 106 S.Ct. at 1076, n. 18, were never provided by the Union's accountant as required. Moreover, the labor reports subsequently provided to Plaintiff neither included a verification by the accountant nor enabled Plaintiff to adequately compare and analyze that information in the context of the agency service fee demanded. Finally, the Union unrealistically expected Plaintiff to detail his objections prior to his receipt of complete financial information.[3]

In all these respects and in light of *Hudson,* the Union's actions were inadequate. As the First Circuit indicated when faced with a similar challenge by members of Puerto Rico's integrated bar association to compulsory membership and fees, it was the obligation of the bar association, referred to as the *Colegio,* to issue a report which would "categorize activities as suitable or unsuitable for mandatory funding ... and ... list the cost for each activity." *Schneider v. Colegio de Abogados de Puerto Rico,* 917 F.2d 620, 636–37 (1st Cir.1990), *cert. denied,* 502 U.S.

---

**3.** Plaintiff disputes the Union's contention that his counsel had been invited, in a May 13, 1994 letter, to personally review Union financial records. Even were such an invitation outstanding, however, any records available to Plaintiff at that time were immaterial to the Union's agency fee demand which, Plaintiff claims, was made on February 17, 1994. See *Harrison v. Massachu-*

*setts Soc. of Professors/Faculty Staff Union/MTA/NEA,* 405 Mass. 56, 537 N.E.2d 1237, 1241 (1989) (the union must provide " 'an adequate explanation of the basis for the fee' *contemporaneous with* the union's agency fee demand") (emphasis added) (quoting *Hudson* at 306, 106 S.Ct. at 1075).

1029, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992). The First Circuit also indicated that:

> [i]t is the Colegio's obligation at the outset of a dues year to categorize its activities so that an escrow amount can be based on actual anticipated expenditures for non-core activities. Although absolute precision in predicting plans and expenses is not required, it is insufficient to classify activities only after a member specifically objects to financing them with mandatory dues. This would place too great a burden on members to monitor Colegio activities.

*Id.* at 634–35 (citations and internal quotations omitted). The First Circuit assumed, further, that the accountant's report would be verified. *Id.* at 636. These standards were not met here.

██ With respect to the role of the auditor, the Union's assertion that *Hudson*'s reference to "verification by an independent auditor" has been "overwhelmingly rejected by the Courts," Defendant's Memorandum at 12, is simply not accurate. Indeed, all of the decisions cited by the Union acknowledge the binding nature of the reference. What courts, for the most part, have rejected is the notion that the auditor verify what is *in fact* chargeable or non-chargeable.[4] It is, perhaps, this rejection to which the Union refers.

Concededly, the role of the auditor referenced in *Hudson* is not crystal clear—causing great uncertainty given the various levels of accounting at which an auditor might operate. See *Tierney,* 824 F.2d at 1506. What is clear, however, is that the auditor must be independent and that he or she must "verify" the major categories of expenses. As described, at least with respect to the latter requirement, this was not satisfied by the Union in the present matter. Thus, whether or not the auditor was independent, the information he provided did not include the major categories of both chargeable and non-chargeable expenses. On the other hand, the full-blown audit which Plaintiff appears to seek is not required. In this Court's opinion, *Hudson* only requires the independent auditor to fulfill the usual function of an auditor to verify a union's calculations and disbursements. A union need not "engage its auditors to perform the highest possible level of audit service." See *Gwirtz v. Ohio Educ. Ass'n,* 887 F.2d 678, 680 (6th Cir.1989) (internal quotations omitted), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1810, 108 L.Ed.2d 941 (1990).

██ Moreover, the verified financial information is not intended to be dispositive of any dispute. As noted by the SJC, the verified information is actually "designed only to permit an agency fee payer to decide whether to oblige the union to prove before an independent fact finder that the agency fee charged was properly determined." *Belhumeur v. Labor Relations Com'n,* 411 Mass. 142, 580 N.E.2d 746, 748 (1991), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1759, 118 L.Ed.2d 423 (1992). Indeed, as the Fourth Circuit has explained, "[t]he test of adequacy of the initial explanation to be provided by the union is not whether the information supplied is sufficient to enable the employee to determine in any final sense whether the union's proposed fee is a correct one, but only whether the information is sufficient to enable the employee to decide whether to object." *Dashiell v. Montgomery County, Md.,* 925 F.2d 750, 756 (4th Cir.1991). Only after objection, the Fourth Circuit counsels, must a union more completely bear its burden of

---

**4.** Thus, courts have almost unanimously agreed that "verification by an independent auditor" does not require an auditor to verify the allocations of expenses to the chargeable and non-chargeable categories. See *Ping v. National Educ. Ass'n,* 870 F.2d 1369, 1374 (7th Cir.1989); *Tierney,* 824 F.2d at 1504–05; *Cramer v. Matish,* 705 F.Supp. 1234, 1238 (W.D.Mich.1988), *aff'd,* 924 F.2d 1057 (1990); *Hudson,* 699 F.Supp. at 1339; *Lehnert v. Ferris Faculty Ass'n–MEA–NEA,* 893 F.2d 111, 112 (6th Cir.1989), *cert. denied* 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990). As the Second Circuit explained in *An-*

*drews, "Hudson's* auditor requirement is only designed to ensure ... that the expenditures which the union claims it made for certain expenses were actually made for those expenses." *Andrews,* 829 F.2d at 340. To the extent that the nonmember in *Andrews* was arguing that the auditor ensure as well the allocation of expenses to chargeable and nonchargeable categories, that interpretation was overly broad because it would have the auditor improperly function as the independent decision-maker as to chargeable expenses. *Id.*

**378**

justifying its fee. *Beck v. Communications Workers of America,* 776 F.2d 1187, 1209 (4th Cir.1985), *aff'd on rehearing en banc,* 800 F.2d 1280 (4th Cir.1986), *aff'd,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988).

These post-*Hudson* cases have been addressed by the Court in order to provide some guidance to the parties of its constitutional parameters. See *Schneider,* 917 F.2d at 630–631 (elaborating its discussion "in ways that we hope will prove helpful to defendants in administering a constitutional procedure for protecting dissenters' rights"). Since the Court has determined that the Union's efforts to date fall outside those parameters, the Court need not speculate whether remedial procedures since established by the Union, as mentioned at oral argument, would meet constitutional muster. Plaintiff sought a declaration of the constitutional inadequacy of the existing procedures, and he is entitled to such a declaration at this time. However, the Court need not get involved in the minutiae of what may be constitutionally adequate in the future; Plaintiff simply sought a declaration as to what was constitutionally inadequate in the past. What may or may not meet constitutional muster in the future must be informed by the requirements of *Hudson* to protect nonmembers' First Amendment rights in the context of the rights of the union. See *Andrews v. Education Ass'n of Cheshire,* 653 F.Supp. 1373, 1376 (D.Conn.), *aff'd,* 829 F.2d 335 (2d Cir.1987). See also *Tierney,* 824 F.2d at 1502, *Hohe v. Casey,* 695 F.Supp. 814, 817 (M.D.Pa.1988), *aff'd,* 868 F.2d 69 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107

L.Ed.2d 102 (1989). That balance may take a variety of forms.[5]

### CONCLUSION

Accordingly, the court recommends that Defendant's motion to dismiss, including his request for sanctions, be DENIED and that Plaintiff's cross motion for summary judgment, to the extent it seeks a declaration regarding the constitutional inadequacy of Defendant's procedures, be ALLOWED.[6]

DATED: August 5, 1996

---

5. It is important to note that neither party is seeking the Court's imprimatur on the amount of any particular agency service fee. Rather, both parties address the issues here as procedural, i.e., whether the procedures used by the Union meet constitutional muster.

6. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the

basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); and *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.